**In the Matter of Marvin C. THIRTYACRE, Debtor–Appellant.**

**No. 93–3967.**

United States Court of Appeals, Seventh Circuit.

Argued June 3, 1994.

Decided Sept. 28, 1994.

Stephen T. Fieweger, Katz, McAndrews, Balch, Lefstein & Fieweger, Rock Island, IL (argued), for appellee.

Gregory J. McHugh, Mark A. Appleton (argued), Appleton & McHugh, Aledo, IL, for debtor-appellant.

Before CUDAHY and MANION, Circuit Judges, and GORDON, District Judge.*

MANION, Circuit Judge.

Jody Thorp obtained a $25,000 default judgment against Marvin Thirtyacre when he did not show up in court to defend against an alleged assault and battery. Thirtyacre filed bankruptcy and Thorp challenged the dischargeability of the debt. The bankruptcy court held an evidentiary hearing and determined the debt was nondischargeable under 11 U.S.C. § 523(a)(6) because it resulted from a willful and malicious injury. 154 B.R. 497. Thirtyacre appealed, the district court affirmed, and he appeals to this court. We affirm.

## I. Background

Marvin Thirtyacre was the Sheriff of rural Mercer County, Illinois. He suspected that his wife was having an affair with Jim Brokaw, the Chief of Police for the City of Aledo. Thirtyacre, a veteran of the Vietnam war, became depressed and began visiting the local veterans' hospital for treatment. The doctors at the hospital prescribed Pamelor, a powerful antidepressant drug, and warned him not to take it with alcoholic beverages.

Thirtyacre's suspicions festered. Even with the drug, he continued to experience depression. One day he consumed a large quantity of alcohol and decided to confront Brokaw about the suspected affair. He went to the residence of Judy Thorp—whom Brokaw was officially dating at the time—and kicked in the back door. Nobody was there. Thirtyacre then went to the Aledo police station, hoping to find Brokaw.

In the meantime, Brokaw and Thorp returned to her residence and discovered that the back door had been damaged. Brokaw called the Aledo police station, where Thirtyacre had just arrived. When Thirtyacre heard that Brokaw was on the phone, he grabbed it and—as he describes the conversation in his brief—"argued with Mr. Brokaw on the phone and told him that he was going to return to the Thorp residence to kick Jim Brokaw's posterior region."

Upon hearing this threat, Brokaw went outside to his truck to fetch a gun. Thorp went to her front yard to walk her dog. Thirtyacre arrived and approached the house. Thorp demanded that Thirtyacre leave her property. He responded he was the Sheriff and could do as he pleased. Thorp approached Thirtyacre, and he hit her in the neck, knocking her down. Brokaw and some other police officers who had arrived on the scene then subdued Thirtyacre.

Thorp sued Thirtyacre in state court for assault and battery. He did not respond to the suit and the state court granted Thorp a $25,000 default judgment. Thirtyacre then filed a voluntary petition for a Chapter 7 bankruptcy, seeking to have all of his debts discharged. Thorp filed an adversary complaint in that proceeding, claiming that the $25,000 judgment was nondischargeable because it resulted from a willful and malicious injury. Section 523(a)(6) of the Bankruptcy Code, 11 U.S.C. § 523(a)(6), provides that "(a) A discharge ... does not discharge an individual debtor from any debt ... (6) for willful and malicious injury by the debtor to another entity or the property of another entity...."

The bankruptcy court held an evidentiary hearing to determine whether Thirtyacre's violence was willful and malicious. Thirtyacre argued that because he was drunk and under treatment for depression, he could not form the requisite intent under section 523(a)(6). Thorp countered that on the night of the assault, Thirtyacre appeared in control of his faculties. The court agreed with Thorp, concluding that Thirtyacre "showed a pattern associated with a person who knew what he was doing." Thirtyacre appealed to the district court, which affirmed without hearing oral argument. In its order resolving the appeal, the district court noted:

> As the Bankruptcy Court found, it is difficult to accept Thirtyacre's argument that he was "completely out of control" at the time of the assault and battery of Thorp, yet was able to drive from a tavern, to his home, to Thorp's home, to the police station, and then back to Thorp's home. Thirtyacre was understandably upset and

* Hon. Myron L. Gordon, of the Eastern District of Wisconsin, sitting by designation.

angry over his suspicion that his wife and Brokaw were having an affair, but this does not excuse his deliberate and intentional conduct. Thirtyacre clearly wanted to find and confront Brokaw on the night of December 21, 1988. However, when Thorp got in Thirtyacre's way, he intended to strike Thorp.

Thirtyacre has appealed the district court's judgment. He raises two issues. First, he argues that the bankruptcy court erred in finding that he acted willfully and maliciously. Second, he contends that the district court erred in not allowing oral argument so that he could make this point.

## II. Analysis

### A. Dischargeability

At the bankruptcy hearing, Thorp, as creditor, had the burden to prove by a preponderance of the evidence that her debt met one of the statutory exceptions to discharge. *In re Scarlata*, 979 F.2d 521, 525 (7th Cir.1992). Thorp met this burden, basically, by recounting Thirtyacre's actions. The court found that Thirtyacre acted willfully and maliciously in striking Thorp, and therefore refused to discharge the debt. We review *de novo* the bankruptcy court's and the district court's legal conclusions, and we apply the deferential "clearly erroneous" standard to the factual findings. *In re Kimzey*, 761 F.2d 421, 423 (7th Cir.1985). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985).

We give effect to the words of the statute by viewing their plain meaning. *Matter of Witkowski*, 16 F.3d 739, 745 (7th Cir.1994). "Under § 523(a)(6), of the Bankruptcy Code, willful means deliberate or intentional ... [and] [m]alicious means in conscious disregard of one's duties or without just cause or excuse; it does not require ill-will or specific intent to do harm." *Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir.1986) (internal quotations omitted). Whether an

actor behaved wilfully and maliciously is ultimately a question of fact reserved for the trier of fact. *Id.; see also In re Pasek*, 983 F.2d 1524, 1528 (10th Cir.1993). After a full-blown evidentiary hearing, the bankruptcy court found that Thirtyacre acted intentionally and without just cause in striking Thorp. We are not left with the definite and firm conviction that a mistake has been committed. To the contrary, the circumstances of the attack showed that Thirtyacre had plenty of time to deliberate before finally confronting Brokaw. When Thorp got in his way he hit her; nobody disputes that. By all appearances this battery was intentional and unjustified.

Thirtyacre tries to escape the "willful and malicious" label by arguing that he was drunk and under treatment for depression during the attack. He posits that his drunkenness and depression necessarily negated the willful and malicious elements of section 523(a)(6); essentially, he sought to advance something akin to a voluntary intoxication defense. *Cf. Wagner v. State*, 474 N.E.2d 476, 488 (Ind.1985). It is unclear whether such a theory of defense would be available under section 523(a)(6). The Ninth Circuit in *In re Adams*, 761 F.2d 1422, 1426 (1985), examined the conflicting bankruptcy court decisions on the related question whether driving while intoxicated could be considered willful and malicious conduct. Ultimately, the court did not need to answer the question; the court simply applied recently amended section 523(a)(9), which provides that debts arising from liabilities incurred due to drunk driving are nondischargeable.

State courts sitting in criminal cases sometimes hold that voluntary intoxication can negate a specific intent to commit a crime, but not a general intent. *See* Wayne R. La Fave and Austin W. Scott, Jr., *Substantive Criminal Law* § 4.10 at 552–53 (1986) ("It is sometimes stated that intoxication can negative a 'specific intent' which the crime in question may require (meaning some intent in addition to the intent to do the physical harm which the crime requires), but it cannot negative a crime's 'general intent' (meaning an intent to do the physical act—or, perhaps, recklessly doing the physical act—which the

crime requires).”). *Cf. Robinson v. Ponte,* 933 F.2d 101, 102 (1st Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1301, 117 L.Ed.2d 522 (1992). If we were to borrow that principle here, Thirtyacre would not have been entitled to present a voluntary intoxication defense because section 523(a)(6) does not require specific intent. *Wheeler,* 783 F.2d at 615.

But we need not decide which principles of state criminal law, if any, should be transported to this analysis under section 523(a)(6). Even if something like a voluntary intoxication defense was available in this case, the bankruptcy court could have reasonably concluded that Thirtyacre was not entitled to it. A party is only permitted to present a theory of defense if it is supported by the evidence. *United States v. Douglas,* 818 F.2d 1317, 1320–21 (7th Cir.1987). Thirtyacre was prepared at the bankruptcy court to present a parade of witnesses to prove the effects of intoxication and depression on human behavior. But the bankruptcy judge would hear none of it. Thirtyacre was sober enough to operate a car, sober enough to plan a confrontation, sober enough to track and eventually find Brokaw, sober enough to argue with Brokaw. There was no reason for the bankruptcy court to hear any more about the effects of intoxication. The court could have reasonably concluded that such evidence was irrelevant. The indisputable facts showed Thirtyacre had sufficient capacity to wilfully and maliciously harm Thorp. The bankruptcy court found that Thirtyacre tapped that capacity to strike Thorp willfully and maliciously; that finding is not clearly erroneous.

*B.  Oral Argument*

The district court has discretion over whether to allow oral argument in an appeal from the bankruptcy court. Rule 8012, Bankruptcy Rules. In this case the district court did not allow oral argument, ruling instead based on the briefs and record from the bankruptcy court. The district court is in the best position to decide how to inform itself about the merits of a bankruptcy appeal. Here, the court chose not to duplicate any part of the extensive hearing already held in the bankruptcy court. That is not an abuse of discretion, and we see no reason to second-guess the district court's decision not to hold oral argument.

### III.  Conclusion

For the foregoing reasons, we AFFIRM.