**In re Ravindra K. JAIRATH, Debtor.**

**Jacob Bletnitsky, Plaintiff,**

v.

**Ravindra K. Jairath, Debtor.**

**Bankruptcy No. 98 B 31163.
Adversary No. 99 A 934.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

March 8, 2001.

Russell C. Green, Parad Law Offices, Chicago, IL, for plaintiff.

James A. Chatz, Kamensky & Rubinstein, Lincolnwood, IL, for defendant.

## MEMORANDUM OPINION ON DEBTOR'S MOTION FOR SUMMARY JUDGMENT

JACK B. SCHMETTERER, Bankruptcy Judge.

This adversary proceeding relates to the Chapter 7 bankruptcy petition filed by Ravindra K. Jairath ("Jairath," "Defendant," or "Debtor") on October 2, 1998. Jacob Bletnitsky ("Bletnitsky" or "Plaintiff") filed a Complaint to determine whether the Debtor's debt to the Plaintiff is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A). Bletnitsky contends that Jairath is not entitled to receive discharge of that debt because Jairath made false representations to Bletnitsky concerning the sale of an apartment building. Bletnitsky alleges that Jairath induced him to enter into a real estate contract for the property by misrepresenting the number of apartment units in the building that could lawfully be converted into condo units. Bletnitsky also claims that Jairath should not receive a discharge because he failed to keep a post-contract oral agreement to pay any additional property taxes not provided for in the contract.

Jairath moved for summary judgment. For reasons set forth below, the Debtor's Motion for Summary Judgment will be allowed by entry of separate judgment order.

### UNDISPUTED FACTS AND BACKGROUND

On March 19, 1997 Jairath, as Seller, and Bletnitsky, as Buyer, entered into a real estate contract (the "Contract") for sale of an apartment building located at 930 Ontario in Oak Park, Illinois for a price of $3.1 million dollars. The contract closed on June 4, 1997.

The parties agree in their pleadings that Jairath represented to Bletnitsky that the building contained twenty-one apartments. Jairath's real estate broker had told Bletnitsky that the building contained twenty-

one units and the real estate broker's package also stated that the building contained twenty-one units.

While neither Jairath nor his realtor were shown to have stated expressly that all twenty-one units in the building were legally available to be converted to condos, Jairath's real estate broker represented that the building was suitable for conversion into condominiums. Also, the real estate broker's package provided: "for condo developer, this opportunity provides an opportunity with substantial returns." *See* Real Estate Broker Package, Investment Property Description.

The contract did not state the number of units in the building or warrant that the building was suitable for condominium use. In fact, the contract stated:

> It is understood and agreed that the Property is being sold as is; that Buyer has or will have prior to the closing date inspected the Property; and that neither the Seller nor Agent makes any representation or warranty as to the physical condition or value of the Property or its suitability for the Buyer's intended use.

Real Estate Contract, ¶ 7. Bletnitsky admits in his interrogatory responses that prior to closing on the sale he and his partner, Alex Vaisman, inspected the property "two or three times", but Bletnitsky did not hire a professional inspector.

Prior to the closing on June 4, 1997, Bletnitsky received a copy of an inspection report prepared by an agency of the Village of Oak Park ("Oak Park"). The report stated that an inspection had taken place May 27, 1997, and that the apartment building contained only twenty units. On May 30, 1999, Bletnitsky wrote a letter to Jairath and indicated that he had received and read the Oak Park inspection report. In this letter, Bletnitsky stated that the inspection uncovered several violations, listed each violation, and estimated the repair costs at $88,595.

In September of 1997, Bletnitsky sought approval of Oak Park to convert all twenty-one units of the apartment building into condominiums. Oak Park informed Bletnitsky that twenty units could be converted but that unit 1E was an illegal apartment and must be demolished. Bletnitsky was unable to sell that unit as a condominium. Bletnitsky claims that he would not have paid $3.1 million dollars for the building had he known that it only contained twenty legal units. Bletnitsky claims that as a result of Jairath's representation that the building contained twenty-one units, he sustained a loss of $100,000.

On or about June 10, 1998, Bletnitsky initiated an arbitration proceeding against Jairath claiming that Jairath owed him money for the property taxes assertedly promised post-contract, and also for losses allegedly sustained due to Jairath's asserted misrepresentation. Jairath did not appear at the arbitration proceeding, and no arbitration award (if any was entered) is part of the record in this Adversary proceeding.

■ Jairath filed for Chapter 7 relief on October 2, 1998. The time for filing a complaint under 11 U.S.C. § 523(a)(2)(A) to determine the dischargeability of a debt is governed by Fed.R.Bankr.P. 4007(c). Under Rule 4007(c), such claim must be filed no later than 60 days after the first date set for the meeting of creditors under § 341(a) of the Code, Title 11 U.S.C. Bletnitsky filed this Adversary complaint on July 29, 1999, almost ten months after Jairath filed his bankruptcy petition. Bletnitsky waited almost ten months to file his complaint because he alleges that he did not receive any notice of the bankruptcy filing until that date, since he was not listed in the bankruptcy schedules. Defendant admits that Plaintiff was not scheduled, but denies that he lacked knowledge of the bankruptcy. However, Defendant did not move to dismiss the case under Rule 4007(c), and so Plaintiff's contention as to lack of notice was not contested.

A complaint may be considered timely even if filed after the bar date, if the creditor did not have notice of the bankruptcy case in order to request a timely determination of dischargeability. *In re Dewalt*, 961 F.2d 848 (9th Cir.1992); *The Sophir Co. v. Heiney (In re Heiney)*, 194 B.R. 898 (D.Colo.1996); *Shaheen v. Penrose (In re Shaheen)*, 174 B.R. 424 (E.D.Va.1994). See also 11 U.S.C. § 523(a)(3)(B). Here the creditor was unscheduled, so he did not have notice of the bar date, nor of the bankruptcy filing.

Further undisputed facts are set forth in the "Discussion" part of this opinion.

## JURISDICTION

Jurisdiction over this matter lies under 28 U.S.C. § 1334 and 28 U.S.C. § 157, and the case is referred here by the District Court under Internal Operating Procedure 15(a). This matter constitutes a core proceeding under 28 U.S.C. 157(b)(2)(I).

## APPLICABLE STANDARDS

### A. Summary Judgment.

Rule 56(c) of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by Rule 7056 Fed.R.Bankr.P., provides that summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See *Russo v. Health, Welfare & Pension Fund, Local 705*, 984 F.2d 762 (7th Cir. 1993).

A moving party bears the burden of demonstrating absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Once the moving party has met that burden, the non-moving party must go beyond the pleadings and bring forth specific facts to establish that there is a genuine issue for trial. *Becker v. Tenenbaum–Hill Assoc., Inc.*, 914 F.2d

107, 110 (7th Cir.1990). See also *Matsushita Electric Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). To defeat the motion, a non-moving party is required to do more than show mere existence of some possible doubt as to the material facts, but must show a factual dispute between the parties that is determinative of the outcome under applicable law. *Id.* at 586, 106 S.Ct. at 1356; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). The non-moving party may not rest on its pleadings or on conclusory allegations in affidavits. *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920–21 (7th Cir.1994); *Cusson–Cobb v. O'Lessker*, 953 F.2d 1079, 1081 (7th Cir. 1992).

In determining whether a genuine issue of material fact exists, all facts must be construed in the light most favorable to the non-moving party and all reasonable and justifiable inferences drawn in that party's favor. *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999); See also *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513. However, not every conceivable inference must be drawn in favor of the non-moving party, only those inferences that are reasonable and present an outcome determinative disagreement between the parties. *Richards v. Combined Ins. Co. of Am.*, 55 F.3d 247, 251 (7th Cir.1995); See also *Anderson*, 477 U.S. at 251–52, 106 S.Ct. at 2512.

### B. Dischargeability Claim Under 11 U.S.C. § 523(a)(2)(A)

The party seeking to establish an exception to the discharge of a debt bears the burden of proof, *Selfreliance Fed. Credit Union v. Harasymiw (In re Harasymiw)*, 895 F.2d 1170, 1172 (7th Cir.1990), by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Policies underlying the Bankruptcy Code require that exceptions to discharge be strictly con-

strued against creditors and in favor of a fresh start for debtors, *Goldberg Secs., Inc. v. Scarlata (In re Scarlata),* 979 F.2d 521, 524 (7th Cir.1992), but the Code is intended to afford relief only to the honest but unfortunate debtor. *Cohen v. de la Cruz (In re de la Cruz),* 523 U.S. 213, 217, 118 S.Ct. 1212, 1216, 140 L.Ed.2d 341 (1998).

Section 523(a)(2)(A) of the Bankruptcy Code excepts from discharge any debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition. It lists three separate grounds for dischargeability: actual fraud, false pretenses, and false representation. It was originally held that a single test for all three grounds listed in § 523(a)(2)(A) applies even though the elements for each vary under common law, *AT & T Universal Card Services v. Alvi (In re Alvi),* 191 B.R. 724, 728 (Bankr. N.D.Ill.1996) (Judge Ginsberg), *citing, Mayer v. Spanel,* 51 F.3d 670, 674 (7th Cir.1995), but a recent Seventh Circuit panel opinion made clear that misrepresentation and reliance thereon is not always required to establish actual fraud. *McClellan v. Cantrell,* 217 F.3d 890, 894 (7th Cir.2000).

█ In order to except false pretenses or a false representation from dischargeability, Bletnitsky must establish the following elements: (1) Jairath obtained funds through representations that Jairath either knew to be false, or made with such reckless disregard for the truth as to constitute willful misrepresentations; (2) Jairath possessed the requisite scienter, i.e., he actually intended to deceive Bletnitsky; and (3) to his detriment, Bletnitsky justifiably relied on Jairath's misrepresentations. See *Caez v. Jacob (In re Jacob),* No. 97–A–01664, 1998 WL 150493, at *4 (Bankr.N.D.Ill. Mar. 23, 1998) (Judge Squires), *citing, Mayer v. Spanel Int'l Ltd. (In re Mayer),* 51 F.3d 670, 673 (7th Cir.

1995), *cert. denied,* 516 U.S. 1008, 116 S.Ct. 563, 133 L.Ed.2d 488 (1995). Because the plaintiff must establish each of the above elements to support a finding of a false pretense or misrepresentation, Bletnitsky's failure to establish any one fact is determinative of the outcome. *Clark v. Bryant (In re Bryant),* 241 B.R. 756, 765 (Bankr. M.D.Fla.1999).

█ However, a deceitful trick may qualify as a fraud under *McClellan, Id.,* 217 F.3d at 893. Therefore, a different analysis must be used when a plaintiff alleges actual fraud. *McClellan v. Cantrell,* 217 F.3d 890 (7th Cir.2000). *McClellan* reasoned that since common law fraud is not always in the form of a misrepresentation, a plaintiff need not allege misrepresentation and reliance thereon to state a claim for actual fraud under § 523(a)(2)(A). Instead, the plaintiff must allege that: 1) a fraud occurred; 2) the debtor was guilty of intent to defraud; and 3) the fraud created the debt that is the subject of the discharge dispute. *Id.* at 893–94. Apart from that test, the Plaintiff must allege the fraud with particularity. Rule 7009 Fed. R.Bankr.P. [adopting Rule 9(b) Fed.R.Civ. P.].

## DISCUSSION

**A. The claims of liability under 11 U.S.C. § 523(a)(2)(A) for a false representation.**

█ An intentional falsehood relied on under § 523(a)(2)(A) must concern a material fact. *Kadlecek v. Ferguson (In re Ferguson),* 222 B.R. 576 (Bankr.N.D.Ill. 1998), *citing Mayer v. Spanel Int'l Ltd.,* 51 F.3d 670, 676 (7th Cir.1995). However, a false representation need not be an overt oral or written lie; it may be established by showing conduct intended deliberately to create and foster a false impression. See *Haeske v. Arlington (In re Arlington),* 192 B.R. 494, 498 (Bankr.N.D.Ill.1996) (Judge Squires).

In this case, Plaintiff contends that Jairath made a material misrepresentation as

to the number of legal units in the building. The Plaintiff shows by way of Jairath's deposition that Jairath knew before selling that one of the twenty-one units was an illegal apartment. Also, Bletnitsky has shown that Jairath marketed the property as suitable for condominium conversion. Therefore, absent more, it might be reasonable to infer that Jairath may well have known that the illegal 21st unit could not be converted into a condominium, while recognizing that Bletnitsky as the buyer wanted to convert all twenty-one units and agreed to pay $3.1 million dollars for the building because he thought he could convert all twenty-one units into condominiums.

■■■■■■ Also in the absence of more evidence, it might be reasonable to infer further that Jairath possessed the requisite scienter or intent to deceive Bletnitsky. Proof of intent to deceive is measured by the Debtor's subjective intention at the time the representation was made. *Mercantile Bank v. Canovas,* 237 B.R. 423, 428 (Bankr.N.D.Ill.1998). Where a person knowingly or recklessly makes false representations which the person knows or should know will induce another to act, the finder of fact may logically infer an intent to deceive. *Zirkel v. Tomlinson (In re Tomlinson),* No. 96–A–1539, 1999 WL 294879 at *11 (Bankr.N.D.Ill. May 10, 1999) (Judge Katz), *citing, In re Sheridan,* 57 F.3d 627, 633 (7th Cir.1995).

■■■■ However, in this case there was much more to the story. Although Bletnitsky produced evidence that might in other circumstances have established the first two elements of a § 523(a)(2)(A) claim, he cannot show that he justifiably relied on Jairath's asserted misrepresentation. To establish a claim under § 523(a)(2)(A) for fraud resting on misrepresentation, the plaintiff must establish that he actually and justifiably relied on the Debtor's misrepresentation. *Field v. Mans,* 516 U.S. 59, 70, 116 S.Ct. 437, 444, 133 L.Ed.2d 351 (1995); *See also Zirkel v. Tomlinson (In re Tomlinson),* No. 96–A–

1539, 1999 WL 294879 at *7 (Bankr. N.D.Ill. May 10, 1999) (Judge Katz); *Mercantile Bank v. Canovas,* 237 B.R. 423, 429 (Bankr.N.D.Ill.1998) (Judge Lefkow); and *Haeske v. Arlington (In re Arlington),* 192 B.R. 494, 498 (Bankr.N.D.Ill.1996) (Judge Squires applied the justifiable reliance standard but noted uncertainty about degree of reliance requirement under § 523(a)(2)(A), commenting that "Justifiable reliance is a lower burden to prove than reasonable reliance and does not mean that the objecting creditor's conduct must conform to the standard of a reasonable man." *In re Arlington,* 192 B.R. at 498).

■■■■ On the other hand, justifiable reliance requires more than a finding of reliance in fact. *In re Tomlinson* at *12. "A plaintiff may not bury his head in the sand and willfully ignore obvious falsehoods." *In re Tomlinson* at *12 (internal citation omitted). Another opinion has observed:

> Justifiability is not without limits, however ... a person is required to use his sense and cannot recover if he blindly relies on a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation. [Justifiable reliance] is a matter of the qualities and characteristics of the particular plaintiff and the circumstances of a particular case.

*AT & T Universal Card Services v. Alvi (In re Alvi),* 191 B.R. 724, 731 (Bankr. N.D.Ill.1996) (Judge Ginsberg) (internal citation omitted).

■■■■ Bletnitsky presents evidence of his reliance in fact by offering an affidavit stating that he had acted in reliance on Jairath's misrepresentation. He has not, however, shown any objective evidence of his justifiable reliance. Indeed, Bletnitsky received prior to the sale closing an official inspection report stating that the building contained only twenty apartments. That was sufficient to put him on notice that he

would not be able to convert all twenty-one units into condominiums because one was there illegally. The report, issued by an agency of the Village of Oak Park, was the result of an inspection conducted on May 27, 1997. A May 30, 1997 letter from Bletnitsky to Jairath established that Bletnitsky not only received the Oak Park inspection report, but that he read the report prior to the June 4, 1997 closing day. Bletnitsky stated in his letter that the Oak Park inspection uncovered several repairs that needed to be addressed prior to closing. Moreover in his affidavit, Bletnitsky admits to receiving the inspection report prior to the closing.

The foregoing circumstances demonstrate, particularly in light of Contract ¶ 7 quoted above, that Bletnitsky could not have justifiably relied on any representation by Jairath or his realtor read by the buyer to infer or represent that the building contained twenty-one legally convertible units.

In addition, Bletnitsky bought the property as investment property. An investor is expected to be more sophisticated than the average residential home-buyer. It is clear that Bletnitsky knew enough about real estate to address code violations prior to the closing. If the number of apartment units was material to the transaction, he should have at least paid attention to the report that stated the number of units reported officially to be in the building. His disregard of that information is fatal to his first claim under § 523(a)(2)(A), because he cannot claim justifiable reliance on an inferred misrepresentation contradicted by both the Contract and an official report in his hands. He had no right to close his eyes to those documents and then claim to be deceived by Defendant on an issue addressed in each.

■ Bletnitsky's second claim for false representation is that Jairath should not receive a discharge because he failed to keep a post-contact oral agreement to pay property taxes not addressed in the contract. This claim must fail because a promise to act in the future is not by itself a false representation under § 523(a)(2)(A). *Caez v. Jacob (In re Jacob)*, No. 97–A–01664, 1998 WL 150493, at *4 (Bankr.N.D.Ill.Mar. 23, 1998) (Judge Squires). See also *Rezin v. Barr (In re Barr)*, 194 B.R. 1009, 1018 (Bankr.N.D.Ill. 1996).

**B. That claim of liability under 11 U.S.C. § 523(a)(2)(A) for actual fraud.**

■ Bletnitsky did not with particularity plead a claim for actual fraud, and neither of the parties have briefed this issue. Still, the Court has a duty to consider actual fraud if the plaintiff alleges facts that could support such a finding, *Sidney S. Arst Co. v. Pipefitters Welfare Educ. Fund*, 25 F.3d 417, 421, particularly when the Defendant seeks a final summary judgment barring the suit entirely. Since Bletnitsky claims that Jairath "fraudulently represented" the number of legal units in the building, we must address the actual fraud issue. But even under the recent *McClellan* discussion, Bletnitsky failed to demonstrate a claim for actual fraud under § 523(a)(2)(A).

*McClellan* explained that "fraud" is a:

> ... generic term, which embraces all the multifarious means which human ingenuity can devise and which are resorted to by one individual to gain an advantage over another by false suggestions or by the suppression of truth. No definite and invariable rule can be laid down as a general proposition defining fraud, and it includes all surprise, trick, cunning, dissembling, and any unfair way by which another is cheated.

*McClellan v. Cantrell*, 217 F.3d 890 at 893 (7th Cir.2000).

In *McClellan*, the plaintiff charged the debtor with aiding the debtor's brother in transferring property to hinder the plaintiff's attempts to collect on a debt. Specifically, the plaintiff sold an ice-making machine to a buyer (the debtor's brother) for

$200,000 payable in installments. The plaintiff retained, but did not perfect, a security interest in the machinery. When the buyer defaulted, he sold the machine to his sister, the debtor, for ten dollars. She then sold it for $160,000 and promptly declared bankruptcy to prevent the plaintiff from recovering the collateral or the proceeds from her. The *McClellan* court stated that the debtor's conduct was "as blatant an abuse of the Bankruptcy Code as we can imagine." *McClellan*, 217 F.3d at 893.

In the matter at hand, Bletnitsky alleges that the Debtor "knowingly and fraudulently withheld material information from [Bletnitsky] which had a material effect on the terms of the contract, and which resulted in the [Debtor] receiving more money from [Bletnitsky] than he would otherwise have received." (Complaint, ¶ 10). In other words, Bletnitsky claims that Jairath intended to gain a financial advantage over him by withholding the truth regarding the number of legal units in the building. This type of conduct might in some circumstances fall within the definition of actual fraud described in *McClellan*, i.e. use of a means to gain an advantage over another by suppression of a truth.

Other facts, however, confirm in this case that Jairath did not commit an actual fraud on Bletnitsky. Even if Jairath withheld facts from the Plaintiff to obtain a higher purchase price, Bletnitsky possessed Oak Park's inspection report prior to the closing. The inspection report clearly states that the building contains twenty units. Although *McClellan* broadly defined fraud as the suppressing of a truth, it emphasized that fraud must have an element of unfairness. This transaction between Bletnitsky and Jairath was not unfair, and Bletnitsky assumed the risk of inability to convert all 21 units to condo use when he failed to give heed to the village report in his possession, which showed that one of the units in the building was an illegal one.

Finally, Jairath's failure to keep a post-contract oral agreement to pay property taxes was not pleaded with particularity as a fraud under § 523(a)(2)(A). Moreover, even if the pleading were amended, the facts could not constitute a fraud. A buyer's new oral promise to convey an uncontracted benefit to a purchaser after the purchase contract has been signed does not give the seller a financial advantage over the buyer under the original contract. Moreover, the merger doctrine integrates all prior discussions into an agreement for conveyance of real estate unless delivery of deed would not fulfill the contract. *Neppl v. Murphy*, 316 Ill.App.3d 581, 584, 736 N.E.2d 1174, 249 Ill.Dec. 736 (2000). Finally, the mere breach of a post contract promise as here alleged does not constitute a fraud. *Caez v. Jacob (In re Jacob)*, No. 97–A–01664, 1998 WL 150493, at *4 (Bankr.N.D.Ill. Mar. 23, 1998) (Judge Squires). *See also Rezin v. Barr (In re Barr)*, 194 B.R. 1009, 1018 (Bankr.N.D.Ill. 1996).

### CONCLUSION

For the foregoing reasons, the Debtor's Motion for Summary Judgment will be allowed by separate order.