In re Mary J. SCARPELLO, Debtor.

**Pamela Ann Rae, Plaintiff,**

v.

**Mary J. Scarpello, Defendant.**

**Bankruptcy No. 01 B 05890.
Adversary No. 01 A 00494.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Jan. 29, 2002.

Gregory J. Martucci, Law Office of Gregory J. Martucci, P.C., Roselle, IL, for Plaintiff.

Karen Aldrich, Hoffman Estates, IL, for Debtor.

David E. Grochocinski, Grochocinski, Grochocinski & Lloyd, Ltd., Orland Park, IL, trustee.

### MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

This matter comes before the Court on the complaint filed by Pamela Ann Rae (the "Creditor") against the Debtor, Mary J. Scarpello (the "Debtor") to determine the dischargeability of a debt under 11 U.S.C. § 523(a)(2)(A), § 523(a)(4) and § 523(a)(6). For the reasons set forth herein, the Court finds the debt dischargeable.

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. It is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

## II. FACTS AND BACKGROUND

Many of the facts are undisputed and have been stipulated by the parties. The Debtor and the Creditor are cousins. During 1999, the Creditor was experiencing marital difficulties. Her husband filed a petition for dissolution of marriage, which was subsequently dismissed in September, 1999 because the couple reconciled.

Prior thereto, the Creditor delivered to the Debtor, in several installments, proceeds totaling approximately $66,000.00, which the Creditor had received as part of a medical malpractice settlement. *See* Creditor's Group Exhibits H and K. At the time of the delivery of the funds, the Debtor agreed to hold the sum for the Creditor for the purpose of preventing the Creditor's husband from accessing and using the funds. Accordingly, on February 26, 1999, the Debtor deposited the funds into a certificate of deposit account solely in her name. Thereafter, contrary to the agreement between the parties, the Debtor expended all the funds without the Creditor's knowledge or consent.

On or about January 3, 2001, the Debtor informed the Creditor that she had spent all of the funds. The Creditor made demand for repayment of the funds and the Debtor signed an acknowledgment of her debt to the Creditor. *See* Creditor's Exhibit J. By this writing, the Debtor acknowledged that she owed $66,000.00 plus interest, to be payable upon the sale of her home, and any funds still owed after the sale of her home, were to be paid monthly

to the Debtor until all the money was repaid. On January 17, 2001, the Creditor signed a judgment note dated February 26, 1999, again acknowledging the $66,000.00 debt to the Debtor plus interest of 6½% per annum due on demand. *See* Creditor's Exhibit I.

Thereafter, on February 22, 2001, the Debtor filed a Chapter 7 bankruptcy petition. At the 11 U.S.C. § 341 meeting of creditors, the Debtor acknowledged that at the time she received the funds from the Creditor, the funds were not in the nature of a loan. The Creditor filed her complaint to determine the dischargeability of the debt on May 25, 2001, seeking relief under 11 U.S.C. § 523(a)(2)(A). Just prior to trial, she sought to amend the complaint to include alternate theories of recovery under § 523(a)(4) and § 523(a)(6). Subsequently, the trial was held on January 11, 2002.

The principal witnesses at trial were the parties. The Debtor testified to the close personal relationship between the parties. The Debtor knew that in 1999 the Creditor was having marital difficulties, and that she was concerned with safeguarding the monies received from her malpractice litigation. According to the Debtor, she recalled the Creditor asking her to keep the money and admitted that she agreed to hold it for her and return it upon demand. The Debtor testified that the parties agreed that the funds would be held in a certificate of deposit. According to the Debtor, she showed the Creditor the papers from the bank which purportedly listed the Debtor as beneficiary on the account, as well as some of the statements on the account that were mailed in due course to the Debtor. The Debtor admitted that the Creditor never authorized her to borrow or use the money.

The Debtor began withdrawals from the account in November 1999. During the year 2000, she admittedly withdrew sums from the account from time to time for her household expenses, thus leaving a balance of less than $20,000.00 on deposit. Later, however, she made deposits from her severance pay in connection with the termination of her employment, and her 401(k) and retirement pension plans to increase the account balance in excess of $60,000.00 for a time. Thereafter, the remaining funds on deposit were expended by further withdrawals by the Debtor. According to the Debtor, notwithstanding the subsequent deposits of the above proceeds, the account was completely depleted by July 2000. The Debtor did not tell the Creditor that the account was depleted at that time, and did not show her statements on the account after she began making withdrawals. Shortly after January 1, 2001 the Debtor admitted to the Creditor that the money was gone. The Debtor told her all that happened, and stated that she always intended to return the money to her and still intends to repay her if and whenever she is able. The Debtor admitted signing the documents evidencing the indebtedness and agreeing to use the net equity in her home to repay the debt. She thought that the equity was sufficient to satisfy her debt to the Creditor. However, she did not sell her home because the anticipated equity was not there.

According to the Debtor, the Creditor never asked her to put the Creditor's name on the account. The unauthorized withdrawals were made because of the Debtor's financial problems, which contributed to her dissolution of marriage in December 2000. *See* Debtor's Exhibit No. 3. She also filed bankruptcy because she lost her job, her former husband ceased paying her his obligations under their dissolution of marriage, and he too filed bankruptcy. The Debtor's financial and marital problems partly arose because of her husband's

gambling and the losses sustained. *See* Debtor's Group Exhibit Nos. 2A and 2B.

The Creditor testified that prior to the unauthorized expenditures by the Debtor, the parties had been as close as sisters. She entrusted the funds to the Debtor to be used for her children if something happened to her because of her marital problems. The Creditor never directly received any of the bank statements or tax statements on the subject account. The Debtor never asked permission to withdraw any of the proceeds.

On December 31, 2000, after the Creditor made demand for return of the funds and the bank records, the Debtor advised her that her marriage had been dissolved and that her husband had taken the money. The Debtor agreed to sell her home and use the equity to repay the funds to the Creditor. According to the Creditor, the Debtor told her during the summer of 2000, that the proceeds were safe in the account, and if anything would happen to the Creditor, she would see that the money was used to take care of the Creditor's children. The Debtor advised that she wanted to stay in her home and could not sell it because of the lack of equity. Instead, she offered a repayment plan of $100.00 a month in lieu of filing bankruptcy. This offer was rejected by the Creditor.

At the close of the evidence, the Debtor moved for directed findings under Federal Rule of Bankruptcy Procedure 7052, incorporating by reference Federal Rule of Civil Procedure 52(c).

### III. *APPLICABLE STANDARDS*

█ The party seeking to establish an exception to the discharge of a debt bears the burden of proof. *In re Harasymiw,* 895 F.2d 1170, 1172 (7th Cir.1990); *Banner Oil Co. v. Bryson (In re Bryson),* 187 B.R. 939, 961 (Bankr.N.D.Ill.1995). The United States Supreme Court has held that the burden of proof required to establish an exception to discharge is a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). *See also In re McFarland,* 84 F.3d 943, 946 (7th Cir.), *cert. denied,* 519 U.S. 931, 117 S.Ct. 302, 136 L.Ed.2d 220 (1996); *In re Thirtyacre,* 36 F.3d 697, 700 (7th Cir.1994). To further the policy of providing a debtor a fresh start in bankruptcy, "exceptions to discharge are to be construed strictly against a creditor and liberally in favor of a debtor." *In re Scarlata,* 979 F.2d 521, 524 (7th Cir.1992) (quoting *In re Zarzynski,* 771 F.2d 304, 306 (7th Cir.1985)). *Accord In re Reines,* 142 F.3d 970, 972–73 (7th Cir.1998), *cert. denied,* 525 U.S. 1068, 119 S.Ct. 797, 142 L.Ed.2d 659 (1999).

### IV. *DISCUSSION*

#### A. *11 U.S.C. § 523(a)(2)(A)*

█ Section 523 of the Bankruptcy Code enumerates specific, limited exceptions to the dischargeability of debts. Section 523(a)(2)(A) provides:

(a) A discharge under section 727 ... does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

11 U.S.C. § 523(a)(2)(A). Section 523(a)(2)(A) lists three separate grounds for dischargeability: actual fraud, false pretenses and false representation. *Bletnitsky v. Jairath (In re Jairath),* 259 B.R. 308, 314 (Bankr.N.D.Ill.2001). A single test was applied to all three grounds even though the elements for each vary under common law. *Id.* (citations omitted). The

Seventh Circuit, however, made clear that misrepresentation and reliance therein is not always required to establish fraud. *McClellan v. Cantrell,* 217 F.3d 890, 894 (7th Cir.2000).

■ In order to except false pretenses or a false representation from dischargeability, the creditor must show the following elements: (1) the debtor obtained funds through representations that the debtor either knew to be false, or made with such reckless disregard for the truth as to constitute willful misrepresentations; (2) the debtor possessed the requisite scienter, i.e., he actually intended to deceive the creditor; and (3) to his detriment, the creditor justifiably relied on the debtor's misrepresentations. *Caez v. Jacob (In re Jacob),* Bankr. No. 97 B 27010, Adv. No. 97 A 01644, 1998 WL 150493, at *4 (Bankr.N.D.Ill. Mar. 23, 1998) *(citing In re Mayer,* 51 F.3d 670, 673 (7th Cir.), *cert. denied,* 516 U.S. 1008, 116 S.Ct. 563, 133 L.Ed.2d 488 (1995)). The creditor must establish each of the these elements to support a finding of a false pretense or misrepresentation; failure to establish any one element is determinative of the outcome. *Jairath,* 259 B.R. at 314 (citation omitted).

■ An intentional falsehood relied on under § 523(a)(2)(A) must concern a material fact. *Id.* (citations omitted). Misrepresentation of the type that makes a debt non-dischargeable under § 523(a)(2)(A) can be shown through conduct, and does not require a spoken statement. *Id. (citing Haeske v. Arlington (In re Arlington),* 192 B.R. 494, 498 (Bankr. N.D.Ill.1996) (conduct intended to create a false impression constitutes misrepresentation)).

■ The determination of whether the debtor had the requisite scienter is a factual question which is resolved by a review of all of the relevant circumstances of a particular case. *Park Nat'l Bank & Trust of Chicago v. Paul (In re Paul),* 266 B.R. 686, 694 (Bankr.N.D.Ill.2001) (citations omitted). Proof of intent to deceive is measured by a debtor's subjective intention at the time the representation was made. *Mercantile Bank v. Canovas,* 237 B.R. 423, 428 (Bankr.N.D.Ill.1998). Where a person knowingly or recklessly makes false representations which the person knows or should know will induce another to act, the finder of fact may logically infer an intent to deceive. *Zirkel v. Tomlinson (In re Tomlinson),* Bankr. No. 96 B 27172, Adv. No. 96 A 1539, 1999 WL 294879 at *11 (Bankr.N.D.Ill. May 10, 1999) *(citing Sheridan,* 57 F.3d at 633).

■ Reliance on a false pretense or false representation under § 523(a)(2)(A) must be "justifiable." Justifiable reliance is an intermediate level of reliance. It is less than reasonable reliance, but more than reliance in fact. *Field v. Mans,* 516 U.S. 59, 74–75, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995). The justifiable reliance standard imposes no duty to investigate unless the falsity of the representation is readily apparent. *Id.* at 70–72. Whether a party justifiably relies on a misrepresentation is determined by looking at the circumstances of a particular case and the characteristics of a particular plaintiff, and not by an objective standard. *Id.* at 71. To satisfy the reliance element of § 523(a)(2)(A), the creditor must show that the debtor made a material misrepresentation that was the cause-in-fact of the debt that the creditor wants excepted from discharge. *Mayer,* 51 F.3d at 676 ("reliance means the conjunction of a material misrepresentation with causation in fact").

■ The Seventh Circuit has recently held that "actual fraud" is not limited to misrepresentation, but may encompass " 'any deceit, artifice, trick or design

involving direct and active operation of the mind, used to circumvent and cheat another.'" *McClellan*, 217 F.3d at 893 (*quoting* 4 L. King, *Collier on Bankruptcy*, ¶ 523.08(1)(e) at 523–45 (15th ed. rev. 2000)). Hence, a different analysis must be utilized when a creditor alleges actual fraud. *Id.* The *McClellan* court opined that because common law fraud does not always take the form of a misrepresentation, a creditor need not allege misrepresentation and reliance thereon to state a cause of action for actual fraud under § 523(a)(2)(A). *Id.* Rather, the creditor must establish the following: (1) a fraud occurred; (2) the debtor was guilty of intent to defraud; and (3) the fraud created the debt that is the subject of the discharge dispute. *Id.*

 The Court finds that the Creditor has not established by a preponderance of the credible evidence that the Debtor obtain the subject funds from her by means of either fraud, false pretenses or a false representation. The Creditor failed to demonstrate that the Debtor then possessed the requisite intent to deceive her. Moreover, the Court cannot infer an intent to deceive on the part of the Debtor. For purposes of § 523(a)(2)(A), proof of intent to deceive is measured at the time the debtor obtained the funds from the creditor. *See, e.g., Canovas*, 237 B.R. at 428. Ensuing conduct contrary to a former representation by a debtor does not establish that the original representation was false. *Wittman v. Potter (In re Potter)*, 88 B.R. 851, 852–53 (Bankr.N.D.Ill. 1988).

The Debtor admittedly breached her promise and agreement to hold the proceeds for the exclusive benefit of the Creditor and her children by later making unauthorized use of the funds for her own purposes when she encountered the marital, employment and financial reverses. While this conduct may amount to breach of promise, it does not rise to the level of fraud, false pretenses or a false representation. Given the close relationship of the parties, the Creditor justifiably relied on the Debtor's representations that she would hold the money for her benefit and that of her children. However, there is simply no sufficient showing that the Debtor had the proscribed subjective fraudulent intention at the time she obtained the proceeds from the Creditor.

**B. *11 U.S.C. § 523(a)(4)***

 Section 523(a)(4) of the Bankruptcy Code provides that a debtor cannot discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). In order for the Creditor to prevail under § 523(a)(4), she must prove that the Debtor committed (1) fraud or defalcation while acting as a fiduciary; or (2) embezzlement; or (3) larceny.

 Establishing fraud under § 523(a)(4) requires a showing of a positive intentional act involving moral turpitude; constructive fraud is insufficient. *Erie Materials, Inc. v. Oot (In re Oot)*, 112 B.R. 497, 500 (Bankr.N.D.N.Y.1989). To establish that a debt is nondischargeable for reasons of fraud or defalcation while acting in a fiduciary capacity, the Creditor must establish, by a preponderance of the evidence, the existence of an express trust or fiduciary relation, and a debt caused by the Debtor's fraud or defalcation while acting as a fiduciary. *Grogan*, 498 U.S. at 291, 111 S.Ct. 654; *In re Woldman*, 92 F.3d 546, 547 (7th Cir.1996). A threshold inquiry is whether a fiduciary obligation runs from the Debtor to the Creditor under the facts of this matter. Whether a debtor was acting in a fiduciary capacity for purposes of § 523(a)(4) is a question of federal law. *In re Bennett*, 989 F.2d 779,

784 (5th Cir.), *cert. denied,* 510 U.S. 1011, 114 S.Ct. 601, 126 L.Ed.2d 566 (1993).

■ The first requirement for application of § 523(a)(4) is that a "fiduciary" relationship exists. To qualify under § 523(a)(4), a fiduciary relation must have an existence independent of a debtor's wrongdoing. *In re Marchiando,* 13 F.3d 1111, 1115–16 (7th Cir.), *cert. denied,* 512 U.S. 1205, 114 S.Ct. 2675, 129 L.Ed.2d 810 (1994). The hallmark of such a relationship is a:

> difference in knowledge or power between fiduciary and principal which ... gives the former a position of ascendancy over the latter. The fiduciary may know much more by reason of professional status, or the relation may be one that requires the principal to repose a special confidence in the fiduciary.... These are all situations in which one party to the relation is incapable of monitoring the other's performance of his undertaking, and therefore the law does not treat the relation as a relation at arm's length between equals.

*Id.* at 1116 (citations omitted). Under Illinois law, a number of relationships can constitute fiduciary relationships: attorney and client, *Marchiando,* 13 F.3d at 1115; joint venturers or partners, *Woldman,* 92 F.3d at 547; corporate directors and shareholders, *Marchiando,* 13 F.3d at 1115; and trustee and beneficiary under an express trust. *Id.*

■ Under Illinois law, an express trust exists where there is (1) intent to create a trust; (2) definite subject matter or trust property; (3) ascertainable beneficiaries; (4) a trustee; (5) specifications of a trust purpose; and (6) delivery of trust property to the trustee. *Yardley v. Yardley,* 137 Ill.App.3d 747, 760, 92 Ill.Dec. 142, 484 N.E.2d 873, 882 (2d Dist.1985). While fiduciary relationships may arise outside of express trusts, the mere existence of a

state law fiduciary relationship may not be sufficient to except from discharge under § 523(a)(4). *Woldman,* 92 F.3d at 547. "[O]nly a subset of fiduciary obligations is encompassed by the word 'fiduciary' in section 523(a)(4)." *Id.* (citation omitted). The Seventh Circuit has made a distinction between a trust or other fiduciary relationship that has "an existence independent of the debtor's wrong and a trust or other fiduciary relation that has no existence before the wrong is committed. A lawyer's fiduciary duty to his client, or a director's duty to his corporation's shareholders, pre-exists any breach of that duty, while in the case of a constructive or resulting trust there is no fiduciary duty until a wrong is committed." *Marchiando,* 13 F.3d at 1115–16. Constructive, resulting and implied trusts do not fall within the confines of § 523(a)(4). *Id.* at 1115. The real distinction is that fiduciary relations that impose actual duties in advance of the breach generally involve a difference in knowledge or power between the fiduciary and principal. As a result, the fiduciary holds a position of ascendancy over the principal. *Id.* at 1116 (citation omitted).

■ The evidence failed to establish that the Debtor held a position of ascendancy or control over the Creditor. That is lacking here, notwithstanding the familial closeness of the parties. The Court finds that the Creditor has not established that a fiduciary relationship for purposes of § 523(a)(4) existed between the parties because there was no pre-existing fiduciary relationship between the parties, nor was there any technical express trust created. At best, the agreement between the parties might have created constructive, resulting or implied trusts which do not fall within the confines of § 523(a)(4).

■ There is no hard and fast definition of "defalcation," the alternative pro-

scribed conduct under § 523(a)(4). The Seventh Circuit, however, has adopted the position, like the Fifth and Sixth Circuits, that mere negligence does not constitute defalcation. *Meyer v. Rigdon*, 36 F.3d 1375, 1382–85 (7th Cir.1994) (construing "defalcation" under § 523(a)(11)); *In re Johnson*, 691 F.2d 249, 255–57 (6th Cir. 1982); *Carey Lumber Co. v. Bell*, 615 F.2d 370, 375–76 (5th Cir.1980). The Seventh Circuit has not clearly defined the level of tortious conduct necessary to constitute a defalcation in the bankruptcy context; it has only required something more than a negligent breach of a fiduciary duty. *Meyer*, 36 F.3d at 1385. This is something less culpable than intentional fraud. One court has defined defalcation within the context of § 523(a)(4) as "the misappropriation of trust funds held in any fiduciary capacity, and the failure to properly account for such funds." *Strube Celery & Vegetable Co., Inc. v. Zois (In re Zois)*, 201 B.R. 501, 506 (Bankr.N.D.Ill.1996) (citation omitted). An objective standard is used to determine a defalcation, and intent or bad faith is not a requirement. *See Green v. Pawlinski (In re Pawlinski)*, 170 B.R. 380, 389 (Bankr.N.D.Ill.1994) (citations omitted).

 Embezzlement under § 523(a)(4) has been defined as the "fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come." *In re Weber*, 892 F.2d 534, 538 (7th Cir.1989) (quoting *Moore v. United States*, 160 U.S. 268, 269, 16 S.Ct. 294, 40 L.Ed. 422 (1895)). To prove embezzlement, the Creditor must show: (1) the Debtor appropriated the subject funds for her own benefit; and (2) the Debtor did so with fraudulent intent or deceit. *Weber*, 892 F.2d at 538; *see also Schaffer v. Dempster (In re Dempster)*, 182 B.R. 790, 802 (Bankr.N.D.Ill.1995); *Pawlinski*, 170 B.R.

at 390. A fiduciary relationship or a trust relationship need not be established in order to find a debt nondischargeable by an act of embezzlement. *Id.* Larceny under § 523(a)(4) necessitates a showing that the Debtor wrongfully took property from its rightful owner with fraudulent intent to convert such property to its own use without the owner's consent. *In re Rose*, 934 F.2d 901, 903 (7th Cir.1991); *Dempster*, 182 B.R. at 802. Embezzlement differs from larceny only in that the original taking was lawful, or at least with the consent of the owner, unlike larceny, where there is a requirement that felonious intent exist at the time of the taking. *Id.*

 The Debtor testified that at all times she intended to repay the Creditor the funds. Hence, the Court finds the Debtor lacked fraudulent intent necessary for her acts of converting the funds to amount to embezzlement or larceny. Moreover, the use of the funds for the Debtor's own purposes, while a clear breach of the agreement between the Debtor and the Creditor, was not larceny because the Debtor's original possession of the funds was lawful and with the consent of the Creditor.

 In short, the actions of the Debtor, which produced dissipation of the funds in the account, clearly constitute a breach of her agreement with the Creditor, but do not rise to the level of fraud, defalcation, embezzlement or larceny under § 523(a)(4). A breach of contractual duties is not functionally equivalent to fiduciary fraud, defalcation, embezzlement or larceny. Consequently, the Court finds the debt dischargeable under § 523(a)(4).

### C. *11 U.S.C. § 523(a)(6)*

 Section 523(a)(6) of the Bankruptcy Code provides:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

11 U.S.C. § 523(a)(6). In order to be entitled to a determination of non-dischargeability under § 523(a)(6), the Creditor must prove three elements by a preponderance of the evidence: (1) that the Debtor intended to and caused an injury; (2) that the Debtor's actions were willful; and (3) that the Debtor's actions were malicious. *French, Kezelis & Kominiarek, P.C. v. Carlson (In re Carlson)*, 224 B.R. 659, 662 (Bankr.N.D.Ill.1998) (citation omitted), *aff'd*, No. 99 C 6020, 2000 WL 226706 (N.D.Ill. Feb. 22, 2000), *aff'd* —— F.3d ——, 2001 WL 1313652 (7th Cir. Oct. 23, 2001). "Willful" for purposes of § 523(a)(6) means intent to cause injury, not merely the commission of an intentional act that leads to injury. *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). Under *Geiger* and its more stringent standards, to satisfy the requirements of § 523(a)(6), the Creditor must plead and prove that the Debtor actually intended to harm her and not merely that the Debtor acted intentionally and she was thus harmed. *Id.* at 61–62, 118 S.Ct. 974. The Debtor must have intended the consequences of her act. *Id.* Injuries either negligently or recklessly inflicted do not come within the scope of § 523(a)(6). *Id.* at 64, 118 S.Ct. 974. With reference to claims of conversion, not every tort judgment for conversion is exempt from discharge. "There may be a conversion which is innocent or technical, an unauthorized assumption of dominion without willfulness or malice." *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 332, 55 S.Ct. 151, 79 L.Ed. 393 (1934) (cited with approval by *Geiger*). Thus, to find conversion of a creditor's property non-dis-chargeable, there must be an intentional injury.

The Supreme Court did not define the scope of the term "intent" utilized to describe willful conduct. Recent decisions, however, have found that either a showing of subjective intent to injure the creditor or a showing of a debtor's subjective knowledge that injury is substantially certain to result from his acts can establish the requisite intent required in *Geiger*. *See In re Su*, 259 B.R. 909, 913 (9th Cir. BAP 2001); *State of Texas v. Walker*, 142 F.3d 813, 823 (5th Cir.1998), *cert. denied*, 525 U.S. 1102, 119 S.Ct. 865, 142 L.Ed.2d 768 (1999); *In re Markowitz*, 190 F.3d 455 (6th Cir.1999); *Fidelity Fin. Servs. v. Cox (In re Cox)*, 243 B.R. 713, 719 (Bankr. N.D.Ill.2000).

"Malicious" means "in conscious disregard of one's duties or without just cause or excuse...." *Thirtyacre*, 36 F.3d at 700. The test for maliciousness under § 523(a)(6) is (1) a wrongful act, (2) done intentionally, (3) which causes injury to the creditor, and (4) is done without just cause and excuse. *Paul*, 266 B.R. at 696 (citations omitted). A debtor does not have to act with ill will or a specific intent to do harm to the creditor for the conduct to be malicious. *Thirtyacre*, 36 F.3d at 700. Whether an actor behaved willfully and maliciously is ultimately a question of fact reserved for the trier of fact. *Id.*

The Creditor's strongest argument lies under § 523(a)(6) because unquestionably the actions of the Debtor caused the Creditor an injury in her property interest in the proceeds. The Debtor's actions were the effective conversion of the account proceeds for the Debtor's benefit and use. It is clear that the Debtor's wrongful conduct in converting the proceeds was an intentional act, but the evidence failed to demonstrate that the

Debtor, at all times, intended to cause the Creditor the requisite injury. The Debtor's replenishing of the account through subsequent deposits of proceeds from severance pay and retirement funds, after she had made some initial withdrawals, is more probative of her intent not to cause the Debtor injury. Moreover, her subsequent offers to make installment payments and utilize the perceived equity from the sale of her home in satisfaction of the debt, negates the requisite showing of subjective intent to injure the Creditor. The Debtor's loss of employment, dissolution of her marriage and the attendant loss of benefits from her former spouse, effectively precluded her from performing her stated intent to reimburse the Creditor. The Court finds the Debtor's testimony that she always intended to and still intends to reimburse the Creditor for her conversion of the account proceeds credible. Therefore, the Creditor failed to establish all of the requisite elements. Accordingly, the Court finds the debt owed by the Debtor to the Creditor dischargeable under § 523(a)(6).

## V. CONCLUSION

For the foregoing reasons, the Debtor's motion for directed findings is granted. The Court finds that the debt owed by the Debtor to the Creditor is dischargeable under § 523(a)(2)(A), § 523(a)(4) and § 523(a)(6).

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.