**In re Muhammad M. MUKHI, Debtor.**

**Zafar Sheikh, Plaintiff,**

v.

**Muhammad M. Mukhi, Defendant.**

**Bankruptcy No. 99 B 21623.
Adversary No. 00A00037.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Nov. 1, 2000.

---

Zafar Sheikh, Chicago, IL, pro se.

Adrian Mazar, Chicago, IL, for Debtor/Defendant, Muhammad M. Mukhi.

Alex D. Moglia, Schaumburg, IL, Chapter 7 Trustee.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

JACK B. SCHMETTERER, Bankruptcy Judge.

Following trial held on Zafar Sheikh's ("Plaintiff" or "Sheikh") Complaint to Revoke Discharge and Other Relief (the "Complaint") in which Sheikh who is not an attorney represented himself, the Court now makes and enters Findings of Fact and Conclusions of Law. Pursuant thereto, a $7,500 debt owed to Sheikh by debtor Muhammad Mukhi ("Debtor" or "Mukhi") plus pre-judgment interest thereon will by separate order be adjudged to be nondischargeable under 11 U.S.C. § 523(a)(2)(A) because it was incurred by fraud and misrepresentations. However, Debtor's discharge in bankruptcy which was entered October 24, 1999 will not be revoked, and all other relief sought in this Adversary proceeding will be denied.

### FINDINGS OF FACT

In April of 1995 Plaintiff Sheikh entered into a sales agreement with the Defendant Mukhi. Pursuant to the agreement, Mukhi contracted to purchase two convenience stores owned and operated by Sheikh located at 4256 W. Fullerton and 3635 W. Armitage in Chicago, Illinois, for the total purchase price of $234,000. Debtor's brother Saleem Mukhi loaned Debtor $30,000 to purchase the business on Fullerton.

Pursuant to the sales agreement, Mukhi made a down payment of $50,000 on or about April 15, 1995 and an additional payment of $50,000 on or about September 30, 1995. Thereafter under the agreement, Mukhi was obligated to make monthly payments to Sheikh.

Sheikh owned the property at 3635 W. Armitage where one of the stores was

located. On or about November 1, 1995, Sheikh and Mukhi entered into a lease agreement whereby Sheikh agreed to lease the premises at 3635 W. Armitage for a period of five years. The purpose of the lease was for Mukhi's operation of the store at that location. Mukhi later stopped making payments under both the sales agreement and the lease agreement.

In April 1997, Sheikh filed a state court lawsuit to evict Mukhi from the store on Armitage Avenue. In October of that year the case was dismissed on procedural grounds. A second case initiated by Sheikh was also dismissed because Mukhi allegedly evaded service of process. A third case was filed in which judgment was entered in Sheikh's favor. The judgment ordered Mukhi to vacate the premises on Armitage Avenue.

In February of 1998, Mukhi sold his business located on Fullerton. There were two separate contracts drawn up for the sale. One contract showed the sale price as $48,000, the other showed the sale price as $10,000. Mukhi testified that both contracts were used for the sale and that he received $55,000 for the business.

After Sheikh obtained a judgment to evict Mukhi, the parties thereafter appeared before Cook County Circuit Court Judge Elliott to determine the amount of back rent owing to Sheikh. In July 1998, Judge Elliott entered a judgment in Sheikh's favor ordering Mukhi to pay $21,000 in back rent along with court costs. When Mukhi failed to satisfy the judgment, Sheikh sought to seize Mukhi's assets. Following service of citation summons, Judge Elliott issued an order blocking one bank account in the name of Mukhi at the Foster Bank. The account held about $8,000. The Court ordered that the account funds be transferred to the Circuit Court's Clerk office, but then encouraged the parties to settle. On March 30, 1999 an agreed order was entered. That order provided that the citation lien in favor of Sheikh on the blocked bank account funds would be entirely released and that $7,500

of those funds were to be paid to Mukhi. The agreed order also provided that Mukhi pay Sheikh, beginning April 1, 1999, $500 each month until the full amount of the judgment was satisfied. Five hundred dollars of the blocked fund was paid to Sheikh's attorney out of the $8,000 fund when that agreed order was entered. However, after that order was entered, Mukhi never made any payment to Sheikh either directly or indirectly.

Although Mukhi agreed on March 30, 1999 to make monthly payments of $500, he admitted that in January 1999 he had already started to consider filing for bankruptcy due to financial problems. Furthermore, Mukhi had a very meager income during the year 1999 in which the agreed order was entered. His IRS form W-2 report of wages received showed only $833 for the entire year of 1999. On July 12, 1999, three and a half months after signing the agreed order, Mukhi filed for protection under Chapter 7 of the Bankruptcy Code. It is clear from the foregoing that Mukhi never intended to pay any of the $500 monthly payments, but intended to discharge his debt in bankruptcy. Therefore, his promise to pay $500 per month was a trick and misrepresentation to induce release of Sheikh's lien on the blocked account and to obtain possession of $7,500 from that account.

From March 1998 to October 1998 there were deposits of over $100,000 into one of Debtor's bank accounts. Debtor testified that $55,000 of that was from sale of the business on Fullerton. Debtor also testified that portions of those deposits came from money of members of an "investment club" for which he was a stakeholder. There were fifteen individuals in Mr. Mukhi's community who formed that "investment club." Each member contributed $1,000 per month for a total of $15,000 a month. That money was given to Mukhi who deposited it into his personal bank account. Each month one member of the group was selected to receive the total $15,000 that the group had contributed.

Mukhi thereby received a total cash flow of about $180,000 a year, but did not reflect it on his tax returns because he claims receipt only as a stakeholder. When Mukhi was asked whether he kept records of the "investment club" cash flow, he claimed to have kept a book, but did not bring it into Court. Masood Sahi, a member of the investment group testified as to the group's existence and essentially corroborated Mukhi's testimony regarding the arrangement. Mukhi claimed in his testimony that the $8,000 in account money liened by service of the citation was not his money, but comprised money from members of the "investment club."

Further facts set forth in the Conclusions of Law will stand as additional Findings of Fact.

## JURISDICTION

Jurisdiction lies under 28 U.S.C. § 1334 and 28 U.S.C. § 157. This matter has been referred here by Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. Venue is proper under 28 U.S. § 1409. This matter constitutes a core proceeding under 28 U.S.C. 157(b)(2)(I).

## CONCLUSIONS OF LAW

Plaintiff's Complaint seeks to revoke Mukhi's discharge, and also contests dischargeability of debts owed to Sheikh by Mukhi on various grounds. Sheikh first contends that Debtor is barred from contesting the dischargeability of the debt based on collateral estoppel. He further contends that debts are nondischargeable under 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4) and 523(a)(6). Sheikh further urges that Debtor should not be allowed his discharge in bankruptcy because Mukhi allegedly concealed assets under § 727(a)(2)(A), because Debtor allegedly engaged in racketeering, and because Sheikh asserts a security interest in certain property.

### Collateral estoppel not shown

Sheikh first argues that Mukhi should be collaterally estopped from discharging the debt owed to him because there was a judgment entered in Sheikh's favor in state court.

Under 28 U.S.C. § 1738, federal courts must give full faith and credit to state court judgments, and must give them the same effect as given under applicable state law. *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985). Under Illinois law, three requirements must be met for collateral estoppel to apply: (1) the issue sought to be precluded must be the same as that involved in the prior action, (2) there must be a final judgment on the merits, and (3) the party against whom estoppel is invoked was a party in the prior action. *Kalush v. Deluxe Corp.*, 171 F.3d 489, 492 (7th Cir.1999) citing *Herzog v. Lexington Twp.*, 167 Ill.2d 288, 294, 212 Ill.Dec. 581, 657 N.E.2d 926 (1995).

The sole issue adjudicated in the Illinois state court case was the amount of back rent owing to Sheikh. Therefore, Mukhi is collaterally estopped from contesting the amount of the rent debt owed to Sheikh. However, collateral estoppel does not apply in this proceeding for purposes of determining whether that debt is dischargeable. There was never a litigation in state court of fraud, misrepresentation, willful or malicious injury or any other issue that would be determinative of dischargeability. Thus, apart from the amount of rent debt, the issues in state court were not the same issues involved in this proceeding and all of the other elements necessary for collateral estoppel to apply to the $21,000 state court judgment are not present.

### Error as to the marital status was not material

Sheikh alleges that Mukhi should be denied a discharge because there is an incon-

sistency in Mukhi's bankruptcy petition. In his petition, the Debtor Mukhi who is married, showed his marital status as single.

■ Section 727(a)(4)(A) allows denial of discharge if a "debtor knowingly and fraudulently, in or in connection with the case, made a false oath or account." Because a debtor attests under oath to the accuracy of the schedules that he signs, an error or omission can be a basis for denying a discharge under § 727(a)(4)(A). Section 727(a)(4)(A) was enacted to ensure that debtors supplied accurate information on which the trustee can rely in administering the bankruptcy estate. *In re Tabibian,* 289 F.2d 793, 797 (2d Cir.1961).

■ Mukhi signed the petition, statements, and schedules filed under penalty of perjury. His action, therefore, constitute an oath in a bankruptcy proceeding. Here, however, the evidence did not indicate that the error as to his marital status was intentional. Mukhi testified that it was simply a typographical error. In fact, in another section of Mukhi's bankruptcy petition he showed that he held certain property in tenancy by the entirety which implied a possible marriage, thus allowing an inference that it was simply an error when his marital status was elsewhere shown as single. Taken as a whole, both the statements and the schedules were not evasive and did not constitute an attempt by Mukhi to conceal his marital status.

### *"Racketeering" not proved*

Plaintiff contends that ever since he filed this Adversary Complaint against Mukhi, Mukhi has tried to intimidate him by issuing death threats against Sheikh and his family. Sheikh says that he contacted the Sheriff's Department in Lake County after one alleged death threat and had a complaint registered against the Debtor Mukhi. However he did not by preponderance of evidence prove that death threats were made against him by Debtor, or were used to deter prosecution

of this Adversary case or for any other reason that might give rise to jurisdiction here.

### *Security interest theory has no merit*

Sheikh contends that by Mukhi entering into an agreed order in state court, a security interest was created in favor of Sheikh under 11 U.S.C. § 101(51), possibly referring to the lien created by service of citation summons. However, the existence of such lien is not by itself a statutory basis for revocation of discharge or for finding a debt to be nondischargeable. *See* 11 U.S.C. § 523 and § 727.

### *Nondischargeability of $7,500 debt was established under §§ 523(a)(2)(A)*

Sheikh seeks to determine that the debt owed to him is nondischargeable under §§ 523(a)(2)(A), 523(a)(4) and 523(a)(6).

Section 523(a)(2)(A) excepts from discharge any "debt for money, property, services, or an extension, renewal, or refinancing of credit to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."

■ In order to except a debt from dischargeability for fraud or false pretenses or false representation under § 523(a)(2)(A), the following must be established: (1) that Debtor obtained the funds at issue through actual fraud or false pretenses or representations he either knew to be false, or made with such reckless disregard for the truth as to constitute willful misrepresentations; (2) that Debtor actually intended to deceive the Plaintiff; and (3) that to his detriment, Plaintiff justifiably relied on the misrepresentation. *Field v. Mans,* 516 U.S. 59, 74–75, 116 S.Ct. 437, 446, 133 L.Ed.2d 351 (1995); *In re Sheridan,* 57 F.3d 627, 635 (7th Cir. 1995). Either misrepresentations or some trick and deceit (here the phoney promise by Debtor to pay $500 a month when he had no income to permit such payments

and was planning to file in bankruptcy) can amount to actual fraud. *McClellan v. Cantrell,* 217 F.3d 890, 892–3 (7th Cir. 2000).

■ Sheikh first asserts that Mukhi used false representations and false pretenses to obtain his lease of Sheikh's property at 3635 W. Armitage. Sheikh contends that Mukhi agreed to abide by the terms in the sales agreement, although he had no intentions of doing so, in order to convince Sheikh to enter into the lease with him. However, Plaintiff did not establish by preponderance of evidence that at the time Debtor entered into the lease of property on Armitage he did not intend to abide by the sales agreement or lease, and therefore no misrepresentation or fraud was proved in that connection.

■ Sheikh also contends that Mukhi entered into the agreed state court order and obtained the release of his lien which blocked the $8,000 account by false pretenses, false representations, and actual fraud, knowing that he did not intend to abide by the agreed order to make $500 monthly payments on the judgment. Sheikh alleges that he justifiably relied upon the misrepresentations to enter into the agreed order for the funds to be released and for his judgment to be satisfied in installments.

■ A judgment creditor can obtain a lien on a debtor's bank account by service of citation or garnishment summons. *See Podvinec v. Popov,* 168 Ill.2d 130, 212 Ill. Dec. 951, 658 N.E.2d 433 (1995) (citation lien), and 735 ILCS 5/12–707(a) (garnishment lien).

The first element of § 523(a)(2)(A) is clearly met as to the $8,000 account. Debtor obtained release of the funds at issue (or at least the $7,500 turned over to Mukhi after $500 was by agreement paid to the lawyer) through false pretenses and misrepresentation of intent to pay monthly installments that he either knew to be false or made with such reckless disregard for the truth as to constitute willful misrepresentations.

Mukhi admitted that he began to consider bankruptcy in January of 1999, two months before he obtained the release of funds on his promise to make monthly payments. Mukhi agreed to pay $500 per month beginning April 1, 1999 to Sheikh during a year in which he earned only $833 for the entire year of 1999. Mukhi testified that the funds in the seized bank account were not his but rather belonged to members of the "investment club." Masood Sahi, a member of the "investment club" claimed to be entitled to that month's payment from the pool. Sahi attended the state court hearing with Mukhi in hopes of obtaining what was claimed to be his money. Mukhi testified that after the $7,500 was released to him he returned all those funds to three "investment club" members. Mukhi therefore obtained release of the funds from state court with no intention of using any portion of the released funds to make $500 monthly payments on Sheikh's judgment.

■ The foregoing evidence supports the claim that Mukhi intended to deceive Sheikh in order to obtain release to himself of $7,500 from the bank account fund, which he then used to pay his friends what he claims to have owed them as part of the "investment club" arrangement. Direct evidence of the defendant's state of mind at the time of an alleged fraud rarely exists. *In re Wien,* 155 B.R. 479, 488 (Bankr.N.D.Ill.1993). Thus, any finding as to fraudulent intent of a debtor or intent to deceive must usually be established by circumstantial evidence. *Id.* An intent to deceive may logically be inferred from a false representation which the debtor knows or should know will induce another to advance money to the debtor. *Carini v. Matera (In re Matera),* 592 F.2d 378 (7th Cir.1979).

The same evidence indicating that Debtor obtained the $7,500 fund through false representations also indicates that Debtor intended to deceive Sheikh (thus satisfying

the second element required under § 523(a)(2)(A)). At the time Mukhi entered into the agreed order he had minimal income; he was considering bankruptcy; aside from the initial $500 paid to Sheikh's attorney not a penny of the funds released to Mukhi was intended to be used to pay Sheikh, but were to be paid to members of the "investment club." There is no indication that Mukhi had any possible means or intent to pay anything to Sheikh. Nonetheless, Mukhi gave his promise to pay Sheikh $500 a month just to have the lien released and obtain the funds. Three and a half months later, Mukhi filed for bankruptcy, carrying through on his intent to do so that he began to plan by consulting a bankruptcy lawyer before his payment promise was given to Plaintiff.

■ Reliance on a promise under § 523(a)(2)(A) must be "justifiable." Justifiable reliance is an intermediate level of reliance. It is less than reasonable reliance, but more than reliance in fact. *Field,* 516 U.S. at 74–75, 116 S.Ct. at 446. The justifiable reliance standard imposes no duty to investigate unless the falsity of the representation is readily apparent. *Id.* at 70–72, 116 S.Ct. at 444.

Sheikh contends he entered into the agreed order believing that Mukhi would honor it. The parties agree that the issue of whether the funds in the liened bank account belonged to individuals other than Mukhi was raised in state court. The parties dispute whether the state court judge rejected this contention, and no transcript or court order was presented to show who is right. Regardless of whether or not the state court judge rejected this contention, it is clear that the agreed order did not provide for funds to be paid to anyone other than $7,500 to Mukhi and $500 to Plaintiff's lawyer.

From the foregoing history and the agreed order entered in state court, it must be found that Sheikh justifiably relied on Mukhi's assertions that he would repay the judgment in $500 installments.

That is so because there has been no evidence that Sheikh then had knowledge of Mukhi's meager income, nor that he knew Mukhi was considering bankruptcy at the time of the agreed order, nor that he knew Mukhi would use the released funds only to pay back "investment club" members. Indeed, reliance on an agreed order entered in court would seem to be presumedly one on which any litigator can justifiably rely, and also the foregoing circumstances establish such justification here. As a result of his justifiable reliance, Sheikh who had a lien on a $8,000 bank account agreed to have $7,500 of that fund released to Mukhi.

### *Nondischargeability not established under other Bankruptcy Code provisions asserted here*

■ Section 523(a)(6) of the Bankruptcy Code, Title 11 U.S.C., excepts from discharge "any debt for willful and malicious injury by the debtor to another entity or to the property of another entity." A deliberate or intentional injury is required for nondischargeability not simply a deliberate or intentional act that leads to injury. *Kawaauhau v. Geiger,* 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998).

■ The requisite intent can be shown either by subjective intent to injure the creditor or by a showing of debtor's subjective knowledge that injury is substantially certain to result from Debtor's act. *In re Markowitz,* 190 F.3d 455 (6th Cir.1999). Plaintiff contends that his lien interest in the bank account was destroyed by Defendant. However, a § 523(a)(6) injury must be committed by the debtor. It cannot be the product of a creditor's conduct, whereas Plaintiff agreed to the order that destroyed his lien. Moreover, while a fraud that leads to damage of property or to damage of a lien on property might be viewed as covered under § 523(a)(6), that is a logical stretch. *McClellan v. Cantrell,* 217 F.3d 890, 895 (7th Cir.2000).

Section 523(a)(4) excepts from discharge any debt for fraud or defalcation while acting in a fiduciary capacity, or one incurred through embezzlement, or larceny. Under that provision, Plaintiff must show a fiduciary duty established either by an express trust or by a relationship of special trust and substantial inequality of power or knowledge. *In re Woldman,* 92 F.3d 546, 547 (7th Cir.1996); *In re Marchiando,* 13 F.3d 1111, 1116 (7th Cir.1994).

Debtor and Plaintiff's relationship was that of a landlord and tenant or buyer and seller, then debtor and creditor. There was no express trust nor was there a relationship of inequality that justifies the imposition of a special duty, and certainly no proof of embezzlement or larceny, so § 523(a)(4) is not applicable.

### Transfer or concealment of assets not shown under 11 U.S.C. § 727(a)(2)

Section 727(a)(2) provides for denial of a discharge if

the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition; or

(B) property of the estate, after the date of the filing of the petition.

Sheikh alleges that Mukhi acted upon a pre-conceived plan to file bankruptcy more than a year in advance. In February 1998, Mukhi sold one of the stores he owned at 4256 West Fullerton Avenue in Chicago. Sheikh alleges that Mukhi received over $100,000 in cash over a period of six to eight months beginning in February or March of 1998 from the sale and that the payments continued into October 1998, and that the $100,000 alleged has been concealed by Mukhi.

Sheikh's argument that Debtor received a substantial sum for sale of the Fullerton store is based on deposits of over $100,000 into Mukhi's bank account. Mukhi testified that he received only $55,000 for the sale of the business. Sheikh wants the Court to infer that because over $100,000 was deposited into Mukhi's account, the entire amount must have come from sale of the business. Sheikh, however, never brought in the buyer of Mukhi's business as a witness to testify as to the purchase price. Moreover, Mukhi testified that not all the money deposited into the account was his from the sale, but that some came from members of the "investment club," and Plaintiff's evidence did not rebut that evidence by tracing funds and showing the source of funds to be otherwise.

Sheikh also asserts that while Mukhi was selling his Fullerton business, he was investing the proceeds into two other ventures, Mecca Grocery and Chicago Fabric and Fashions. Those businesses are located on Devon Avenue in Chicago, Illinois. The essence of Sheikh's contention is that Debtor has an interest in Chicago Fabric and Fashions and Mecca Grocery although the businesses are in the name of his wife, Salma Mukhi, and in the name of his brother, Saleem Mukhi, respectively. The wife testified that Chicago Fabric and Fashions is her business only and that her husband has no ownership of the business, and Plaintiff's evidence did not establish otherwise.

The basis for Sheikh's allegation that Mecca Grocery is Debtor's business and not that of his brother Saleem is that $30,000 of Debtor's money went into Mecca Grocery. Debtor testified that his payment of $30,000 to Saleem was in repayment of a loan that his brother Saleem had given Mukhi to purchase the Fullerton Store. The circumstances surrounding Saleem's advance of $30,000 to Mukhi for the purchase of the Fullerton store are somewhat murky. Saleem characterizes the $30,000 payment as a loan to debtor Mukhi, but Saleem was given a 25% interest in the Fullerton business. Mukhi testified

that he gave the 25% interest to Saleem as a gift. Whether the $30,000 was an investment or loan, Saleem was evidently entitled to his money back when Fullerton was sold so it cannot be said that the $30,000 was Debtor's money used to buy the Mecca Grocery for his own ownership.

Plaintiff also contends that Debtor has concealed various assets, relying in part on an application for loan that Mukhi and his wife filled out in 1996 for purchase of a home.

The information contained on the loan application stated that Mukhi earned $16,000 a month. Mukhi now claims that the amount was inaccurate and no other evidence showed income even close to that from any source. Plaintiff may have proved that Defendant filed a false loan application, but that does not mean that Defendant actually received dollars in earnings thereby asserted.

The loan application also stated that the family owned $150,000 in jewelry. Mukhi states that was also an error. He testified that any jewelry was owned by his wife, but that it was not worth $150,000. Salma Mukhi, Debtor's wife also testified that she did not own $150,000 in jewelry but did own $15,000 worth of jewelry. However, she was not a bankruptcy debtor and evidence did not show that Defendant owned the jewelry.

The loan application also indicated that Debtor had a life insurance policy with a net cash value of $150,000. Debtor testified that he had a life insurance policy but that it was a term policy and therefore had no cash value. No other evidence was presented to prove existence of what appears to have been a fictional insurance policy. In essence it appears that Mukhi's 1996 loan application was filled with inaccuracies and misstatements, thus demonstrating his personal unreliability. However, evidence did not establish that in fact he had a valuable insurance policy.

1. The Court raised at trial a question as to whether Debtor violated § 727(a)(3) and § 727(a)(4)(D) of 11 U.S.C. by not reporting in his bankruptcy petition his receipts from

Moreover, the loan application was filled out in 1996 when Debtor applied for a loan to purchase a home. Debtor did not file for bankruptcy until July 1999. Even taking Plaintiff's best case, Sheikh did not meet his burden of showing that there was property of the estate in 1999 that was either concealed from the Chapter 7 Trustee or fraudulently conveyed within a year prior to filing in bankruptcy (which would reach back to July of 1998). Because § 727(a)(2) was Plaintiff's only basis for requesting a revocation of a discharge, Debtor's discharge will not be revoked.[1]

### CONCLUSION

For the reasons stated, a $7,500 debt is owed by Debtor to Plaintiff Zafar Sheikh plus pre-judgment interest from date of the fraud, and that debt will be found by separate judgment order to be nondischargeable under § 523(a)(2)(a). However, no other nondischargeable debt was established, and Debtor's discharge in bankruptcy, will not be revoked.

the "investment club." However since this issue was never raised in the Adversary Complaint it would be inappropriate to rely on it now.