In re Kenneth ARDISSON, Debtor.

Glucona America, Inc., Plaintiff,

v.

Kenneth Ardisson, Defendant.

Bankruptcy No. 00 B 27406.
Adversary No. 00 A 01151.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Aug. 28, 2001.

Richard L. Horn, Kurt T. Temple, Quarles & Brady LLC, Chicago, IL, for Plaintiff.

Michael J. Davis, Oak Brook, IL, for Defendant.

Donald Johnson, Chicago, IL, trustee.

## MEMORANDUM OPINION

SUSAN PIERSON SONDERBY, Bankruptcy Judge.

Plaintiff Glucona America, Inc. ("Glucona") moves for summary judgment on all counts of its complaint against Debtor Kenneth Ardisson ("Ardisson"). For the reasons set forth below, the motion is denied.

## BACKGROUND

Ardisson, a chemical engineer, was employed by Glucona in 1996 to function initially as its managing director. Later, in 1997, Ardisson became president of Glucona and managing director of Glucona's parent corporation, Glucona, B.V. ("B.V."). In the course of the next few years, Ardisson spent much of his time in the Netherlands, where B.V. is incorporated, although his family remained in the United States. Ardisson's employment with Glucona ended in May or June 1999.

Ardisson and B.V. were parties to an October 2, 1997 written contract of employment (the "Employment Agreement") that provided for a five-year term of employment. It is undisputed that the Employment Agreement contained provisions imposing an obligation of secrecy with respect to all particular details of Ardisson's employment, and an obligation not to compete with Glucona and B.V. for a period of two years following his employment. Ardisson also prepared and signed another agreement that required Glucona employees to return documents upon leaving Glucona's employment. Like the Employment Agreement, this second agreement prohibited the disclosure of information concerning Glucona during or after an employee's term of employment. Ardisson acknowledges that during the term of his employment, he was bound by the common law fiduciary duty to exercise the utmost good faith and loyalty toward Glucona.

Glucona is a leading producer of gluconates, which are used in the production of diverse products in the food, pharmaceutical and industrial markets. Gluconates are obtained by fermentation of glucose derived from natural, environmentally compatible raw materials. Bacteria is apparently used in the fermentation process used to produce gluconates.

Ardisson admits that he was entrusted with confidential information concerning gluconate technology during his employment with Glucona. However, he states that certain aspects of Glucona's technology are widely known. Ardisson's expert also opines that Ardisson has not wrongfully disclosed any proprietary information or trade secrets owned by Glucona. According to Ardisson, Glucona did not take steps to protect the bacteria or the confidential information needed for its production of gluconates.

Looking to events that preceded his departure from Glucona, Ardisson states that he angered members of the Dutch management team by taking steps to terminate plans for a new factory in the Netherlands that was to be used in the production of Gluconal CAL ("CAL"), a calcium supplement produced and sold by Glucona. One of the factors motivating Ardisson's decision to terminate the project was a severe downturn in the demand for CAL. To increase sales of CAL, Ardisson put a price-cutting strategy in place.

Ardisson maintains that after a major corporate reorganization was announced in April 1998, it became clear to him that there was no suitable position for him within the new intercorporate structure. Ardisson was angry that Glucona had not told him of the reorganization plans, which were already underway at the time he signed the five-year Employment Agreement.

Although the sequence of events is not totally clear from the evidentiary submissions in the record, it appears that Ardisson's strategy to boost CAL sales started to show positive results at a time when he would have been contemplating a departure from Glucona. As discussed below, the central issue in this litigation is whether Ardisson wrongfully competed with Glucona in the market for products like CAL.

Glucona contends that in the period after the reorganization was announced, Ardisson expended Glucona's assets as part of an undisclosed scheme to compete against the company. To that end, in fall 1998, Ardisson allegedly decided to shut down a major production initiative to expand a Janesville, Wisconsin plant where materials used in CAL could be produced. Later, in the winter and spring of 1998–99, Ardisson allegedly exceeded his authority by expending large amounts on a Buckeye, Arizona facility where CAL could be produced on a toll manufacture basis. The alleged plan was that if toll production for Glucona did not materialize, the Buckeye plant could be used by Ardisson and certain associates for competition against Glucona. When he left Glucona, Ardisson allegedly took a computer hard drive containing confidential files and hundreds of company documents, among them customer lists, technical documents and research documents.

Glucona further maintains that after his termination, Ardisson prepared a prospectus and sought investors for the Buckeye plant, in which he would have a residuary one-fourth interest. While still an employee of Glucona and in pursuit of his plan, Ardisson also allegedly solicited other Glucona employees to join his venture. Two witnesses have testified that Ardisson asked that they take some of Glucona's proprietary strain of bacteria. Both before and after leaving Glucona, Ardisson is

alleged to have worked on processes which would yield products in competition with Glucona. Glucona accuses Ardisson of having revealed trade secrets to a competitor who worked on developing a strain of bacteria for Ardisson's new venture. Then, in an effort to gain their business, Ardisson allegedly provided information concerning the work on the bacteria to others of Glucona's competitors. *See* Glucona's Local Rule 402(M)(3) Statement, ¶¶ 27 38, 42–43.

Glucona's technology expert has rendered the following opinion with respect to the alleged wrongs perpetrated:

> ... I assert that Glucona has proprietary confidential information and trade secrets in gluconate technology, which are of great value to the company. It is also my opinion that Kenneth Ardisson violated his duties to Glucona America, Inc. and professional ethics, and has tried to harm the company by disclosing the proprietary trade secrets and confidential information.

Datta Technical Expert Opinion Report at 2.

On December 23, 1999, Glucona filed a complaint against Ardisson in the United States District Court for the Northern District of Illinois (the "District Court"). That suit (the "District Court Action") was based on the allegations summarized above. In the District Court Action, Glucona sought damages and injunctive relief for breach of an employee's duty of loyalty, trade secret misappropriation and disclosure of confidential information. During the course of the litigation, the parties engaged in extensive written discovery and a substantial number of depositions were taken. The District Court Action was set for trial on October 2, 2000, but was dismissed without prejudice after Ardisson filed a voluntary petition for relief under Chapter 7 on September 19, 2000.

In Count I of the complaint in this adversary proceeding, Glucona seeks a finding that Ardisson is not discharged from liability for those wrongs alleged in the District Court Action. The cause of action is brought under § 523(a)(6) of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.* (the "Code"), which provides for the nondischargeability of "debts for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6).

■ Glucona also seeks a finding on nondischargeability of certain alleged debts for unauthorized compensation in Count II. The debts in question would arise from a counterclaim that Glucona has asserted in postpetition litigation initiated by Ardisson in the Netherlands.[1] Glucona contends that the amounts sought in the Netherlands litigation are nondischargeable under Code § 523(a)(2)(A) as debts for money obtained by false pretenses, false representation, or actual fraud.

Finally, in Count III, Glucona seeks an order under Code § 727(a)(4)(A) denying Ardisson a discharge because he knowingly or fraudulently made a false oath or account in connection with his bankruptcy case.[2]

---

**1.** Ardisson incorrectly asserts that his bankruptcy trustee abandoned the cause of action in the Netherlands court when he filed a no asset report in Ardisson's bankruptcy case. *See Helms v. Arboleda (In re Arboleda),* 224 B.R. 640, 645 (Bankr.N.D.Ill.1998) (commenting that scheduled property is not abandoned until case is closed). *See also In re Williams,* 228 B.R. 910, 912 n. 3 (Bankr. N.D.Ill.1999) (entry of no asset report merely indicates trustee's intent not to administer asset).

**2.** An order of discharge was entered in Ardisson's bankruptcy on December 26, 2000, while this adversary proceeding was pending.

## DISCUSSION

Based primarily on materials from discovery in the District Court Action, Glucona seeks summary judgment on all three counts of its complaint. The motion and statement of facts under Local Bankruptcy Rule ("Local Rule") 402(M)(3) are supported by 27 exhibits,[3] many of which are excerpts of deposition testimony. Glucona also relies on documentary evidence for which it has not presented an evidentiary foundation and the affidavit testimony of experts who have not been qualified as such with respect to all the matters in their testimony.[4] According to Glucona, its statement of facts summarizes the record established through discovery in the District Court Action.

■ In responding to the motion, Ardisson relies for the most part on his own affidavit testimony concerning the events giving rise to this dispute. Significantly, Ardisson admits that he took some of the actions of which Glucona complains. Nonetheless, a recurring theme in Ardisson's testimony is that Glucona has drawn incorrect conclusions regarding the reasons why he took particular actions, and regarding the legality of those actions. For example, Ardisson states that he consulted an attorney on issues relating to his departure from Glucona and his prospective business plans, and that the attorney advised him that the non-compete clause in the Employment Agreement might be unenforceable provided he did not attempt to sell only to customers of Glucona or use Glucona's trade secret technology.[5]

Ardisson also argues the weight to be given Glucona's evidence, and he accuses Glucona of citing his deposition testimony out of context. Since Glucona generally presents only isolated pages or segments of Ardisson's deposition testimony, and because it relies on inference from many of those passages, the Court agrees that the deposition testimony does not invariably support the interpretations that Glucona urges. Because of ambiguities in the deposition excerpts presented, Ardisson's af-

---

Noting that the discharge was entered, Glucona argues in its briefs on this motion that Ardisson's discharge should be revoked.

Because Glucona's complaint includes a count under Code § 727(a) for denial of discharge, the order of discharge was entered in error. An order will be entered that vacates the order of discharge and reopens the bankruptcy case.

3. Thirty-one exhibits support Glucona's reply brief, although for the most part they are the same exhibits as those presented in connection with the opening fact statement.

4. Glucona has submitted the curriculum vitae of both its expert, Rathin Datta, and Ardisson's expert, Richard I. Mateles. Although both witnesses assert expertise in their areas of technological specialization, they also express opinions on other matters, such as the legality of Ardisson's actions. Without cross examination, it is not clear that Datta and Mateles are qualified as experts on all matters within their opinions.

5. The legal questions on which Ardisson allegedly sought professional guidance are complex, and involve numerous questions of law and fact. Under Wisconsin law, which the parties agree applies here, to determine whether a covenant not to compete is enforceable, a court must consider whether it: (1) is necessary to protect the employer's legitimate interests; (2) provides a reasonable time restriction; (3) provides a reasonable territorial restriction; (4) is harsh or oppressive to the employee; and (5) is contrary to public policy. *Nalco Chemical Co. v. Hydro Technologies, Inc.*, 984 F.2d 801, 803 (7th Cir.1993); *Farmers Ins. Exchange v. Sorenson*, 99 F.Supp.2d 1000, 1006 (E.D.Wis.2000). While covenants prohibiting use of confidential customer information may also be subjected to an inquiry as to their reasonableness, there is no time limit on restrictions prohibiting the disclosure of trade secrets. *See Nalco Chemical Co.*, 984 F.2d at 803.

fidavit testimony does not contradict his deposition testimony.

### Standard on Summary Judgment

The well-established standard on a motion under Fed.R.Civ.P. 56(c) and Fed. R. Bankr.P. 7056 is that summary judgment is to be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *E.g., Bellaver v. Quanex Corp.*, 200 F.3d 485, 491 (7th Cir.2000); *Feldman v. American Memorial Life Ins. Co.*, 196 F.3d 783, 789 (7th Cir.1999). In ruling on the motion, the court reviews the record in the light most favorable to the nonmoving party and it draws all reasonable inferences therefrom in the nonmovant's favor. *Schneiker v. Fortis Ins. Co.*, 200 F.3d 1055, 1057 (7th Cir.2000); *Filipovic v. K & R Express Systems, Inc.*, 176 F.3d 390, 395 (7th Cir.1999). Summary judgment is appropriate when there is only one logical conclusion that the fact finder can reach. *Marozsan v. United States*, 90 F.3d 1284, 1290 (7th Cir.1996), *cert. denied*, 520 U.S. 1109, 117 S.Ct. 1117, 137 L.Ed.2d 317 (1997).

The task on a motion for summary judgment is to determine whether there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir.1996), *cert. denied*, 519 U.S. 1115, 117 S.Ct. 957, 136 L.Ed.2d 843 (1997); *Waukesha Foundry, Inc. v. Industrial Engineering, Inc.*, 91 F.3d 1002, 1007 (7th Cir.1996). On such a motion, it is not the court's function to resolve factual disputes or to weigh conflicting evidence. *Id.*

Where the party seeking summary judgment is the plaintiff, or the party bearing the burden of proof at trial, the standard is more stringent. *National State Bank v. Federal Reserve Bank of New York*, 979 F.2d 1579, 1582 (3d Cir.1992). In that scenario, the movant bears the burden of establishing a prima facie case that would entitle it to a directed verdict if the issue was uncontested at trial. *Orozco v. County of Yolo*, 814 F.Supp. 885, 890 (E.D.Cal. 1993). Once the plaintiff-movant makes the initial showing, the burden shifts to the defendant-opponent to come forward with specific facts beyond the pleadings which show the existence of genuine issues of material fact—*i.e.*, those which can be resolved only by a trier of fact because they may be reasonably resolved in favor of either party. *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 256, 106 S.Ct. at 2514).

In responding to a motion for summary judgment, the nonmovant may rely on affidavits rather than tendering evidence in a form that would be admissible at trial. *Liu v. T & H Machine, Inc.*, 191 F.3d 790, 796 (7th Cir.1999). "Moreover, the nonmovant need not match the movant witness for witness, nor persuade the court that his case is convincing; he need only come forward with appropriate evidence demonstrating that there is a pending dispute of material fact." *Id.*

### Common Law Questions Raised in This Action

To prevail on its motion for summary judgment on Count I, Glucona must initially establish as a matter of undisputed fact and law that Ardisson engaged in a scheme to misappropriate trade secrets and compete with Glucona. Because Glucona's causes of action arise under the common law, this opinion looks first to those legal principles that will govern this dispute. As discussed below, that review suggests that it is very unlikely that Gluco-

na's claims could be resolved without a trial.

██ It is well-established that corporate officers and directors owe a fiduciary duty of utmost good faith and loyalty to their corporations, and that they are duty bound not to act adversely to the interest of their employers by serving or acquiring private interests of their own in antagonism or opposition to their employers' interests. *Regal–Beloit Corp. v. Drecoll,* 955 F.Supp. 849, 857–58 (N.D.Ill.1996) (applying Wisconsin law). As agent of his or her employer, an employee would also have the duty to fully disclose all facts having a material bearing on the subject of his or her employment. *Faultersack v. Clintonville Sales Corp.,* 253 Wis. 432, 435, 34 N.W.2d 682, 684 (1948). An employer is entitled to the return of compensation paid the employee where breach of either duty occurs. *Id.,* 253 Wis. at 437, 34 N.W.2d at 684 (breach of duty of full disclosure); *Burg v. Miniature Precision Components, Inc.,* 111 Wis.2d 1, 7–8, 330 N.W.2d 192, 195 (1983) (breach of duty of loyalty).

 Under Wisconsin law, there is no time limit on contractual restrictions that preclude an employee from misusing an employer's trade secrets. *Nalco Chemical Co. v. Hydro Technologies, Inc.,* 984 F.2d 801, 803 (7th Cir.1993). The Wisconsin Uniform Trade Secrets Act defines a trade secret as "information, including a formula, pattern, compilation, program, device, method, technique or process which derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use and which is the subject of efforts to maintain its secrecy that are reasonable under the circumstances." *Minnesota Mining & Manufacturing Co. v. Pribyl,* 259 F.3d 587, 595–96 (7th Cir. 2001). The following factors are helpful in determining whether information constitutes a trade secret: (1) the extent to which the information is known outside the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken to guard the secrecy of the information; (4) the value of the information to the business and to its competitors; (5) the amount of effort or money expended in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others. *Minuteman, Inc. v. Alexander,* 147 Wis.2d 842, 851–53, 434 N.W.2d 773, 777–78 (1989).

██ It should be clear from the preceding discussion that numerous subsidiary facts must be established before there can be a finding that Glucona has established the elements of its causes of action under the common law. This is because the elements of the causes of action are themselves conclusions drawn from numerous underlying facts.

Perhaps because of the impracticality of dealing with each subsidiary fact in a separate paragraph of its fact statement under Local Rule 402(M)(3), Glucona has in many instances asserted numerous facts or conclusions of fact within a single paragraph, with citations to scattered pages of deposition testimony or other evidence. Glucona at many points argues for an inference, as the cited evidentiary material does not explicitly state the proposition urged.[6]

6. Local Rule 402(M)(3) requires that a movant's statement of facts "consist of short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph."

Glucona also relies on lay opinion testimony to establish a number of factual propositions, but without demonstrating that the witness is competent to testify concerning all the matters within the scope of the opinion. As an example, Glucona cites six pages of deposition testimony to support the following averments:

33. In order to prevent Ardisson and his associates from succeeding in converting the Buckeye plant into a facility competitive with Glucona America, which had been deprived of a Janesville source of supply, Glucona America found it necessary to lease the Buckeye plant and to spend very substantial sums, which created very substantial losses, before production could be properly optimized. (Dep. of Sean Traci, 189, 192, 195, 277, 302, Ex. J. hereto).

34. The Buckeye plant was very poorly sited, far from source of supply, far from markets, far from transportation, far from its work force, with a poor environment, poor water quality and antiquated equipment, which no manager who had not the intent to injure Glucona America would have selected. (Dep. of Sean Traci, 195, Ex. J. hereto).

Glucona Fact Stmt., ¶¶ 33–34. Some of the material in the above-cited paragraphs is obviously argument as to the interpretation to be given underlying facts. Also, there are numerous conclusions of fact within these paragraphs, without separate discussion of underlying facts.

Many of Ardisson's responses to Glucona's factual averments are not concise, as required under Local Rule 402(N)(3)(a). Nor has Ardisson presented a separate statement of additional facts requiring denial of summary judgement, as required under Local Rule 402(N)(3)(b).[7] Rather, Ardisson makes lengthy arguments in his Local Rule 402(N)(3)(a) statement, primarily citing his own affidavit testimony. In that affidavit, Ardisson disagrees with Glucona's conclusions of fact, and he testifies as to subsidiary facts that would lead to different conclusions than those that Glucona has reached. Some of Ardisson's testimony relates to defenses such as unenforceability of the Employment Agreement and his contention that Glucona did not possess trade secrets. Like Glucona's causes of action, these defenses turn on numerous subsidiary facts. *See supra* note 5.

The structure of the parties' submissions is such that it would be extremely difficult to separate disputed facts from undisputed facts. That exercise will not be undertaken, however, as overall it is clear from the parties' submissions that there are innumerable issues of subsidiary fact bearing on the questions whether Ardisson unlawfully competed with Glucona and whether he misappropriated trade secrets.

*Count I—Code § 523(a)(6)*

The ultimate issue on Count I is whether Ardisson willfully and maliciously injured Glucona by misappropriating trade secrets and by competing while still having a duty of loyalty to the company. Glucona's principal argument with respect to Count I is that the evidence from the District Court Action supports its theory of liability under Code § 523(a)(6). In particular, Glucona asserts damages in connection with the Buckeye plant. Glucona complains not only of excessive expenditures while Ardisson was still employed, but also of losses incurred afterwards,

---

7. Since Ardisson has not presented additional facts in a separate fact statement, there technically would be no basis for the filing of the reply statement provided for under Local Rule 402(M). Here, Glucona has found it necessary to file a reply statement that addresses the additional facts Ardisson raises in his response.

when Glucona decided to go forward with the Buckeye project.

Ardisson responds that he always functioned with the intention of profiting his employer. According to Ardisson, the essence of his decision was not to put on an addition to the plant in Janesville, and to out source manufacturing to the Buckeye facility in Arizona. Ardisson argues that although there may have been risk associated with his decisions, there was no intent to injure Glucona.

Ardisson acknowledges that he was seeking other employment during the time period at issue in this suit, but maintains that he did so without divulging confidential information or trade secrets. While admitting that he approached certain Glucona employees regarding a competitive venture, Ardisson maintains that he did so on his own time. Ardisson further avers that he never engaged in competition with Glucona after leaving the company.

 In order to obtain a determination of nondischargeability under Code § 523(a)(6), a creditor must ultimately prove three elements: (1) that the debtor caused an injury; (2) that the debtor's actions were willful; and (3) that the debtor's actions were malicious. *KingVision Pay Per View, Ltd. v. DeMarco (In re DeMarco)*, 240 B.R. 282, 287 (Bankr. N.D.Ill.1999). The Seventh Circuit instructs that whether an actor behaved wilfully and maliciously is ultimately a question of fact reserved for the trier of fact. *In re Thirtyacre*, 36 F.3d 697, 700 (7th Cir.1994); *McNichols v. Shala (In re Shala)*, 251 B.R. 710, 713 (N.D.Ill.2000).

 As indicated in the decisions cited by Glucona, where a judgment has already been entered against a debtor in another court prior to bankruptcy, the first element under § 523(a)(6) may be established on a motion for summary judgment through application of principles of collateral estoppel. *See, e.g., The Spring Works v. Sarff (In re Sarff)*, 242 B.R. 620 (6th Cir.BAP2000); *Dent Wizard Int'l Corp. v. Brown (In re Brown)*, 237 B.R. 740 (Bankr.C.D.Cal.1999); *AU Pharmaceuticals, Inc. v. Whitner (In re Whitner)*, 179 B.R. 699 (Bankr.E.D.Okla.1995); *PRP Wine Int'l, Inc. v. Allison (In re Allison)*, 176 B.R. 60 (Bankr.S.D.Fla.1994); *Minuteman, Inc. v. Alexander (In re Alexander)*, 166 B.R. 729 (Bankr.D.N.M.1993). In these cases, similarity between the factual issues litigated in the other courts and those considered by the Bankruptcy Court was also sufficient to permit findings that the debtors' actions were willful and malicious, within the meaning of § 523(a)(6). *Compare Miller v. J.D. Abrams Incorporated*, 156 F.3d 598, 604 (5th Cir.1998), *cert. denied*, 526 U.S. 1016, 119 S.Ct. 1249, 143 L.Ed.2d 347 (1999) (state court had not determined willful injury in trade secrets suit).

 As was not the situation in the cases on which it relies, Glucona's cause of action was not litigated to judgment in another court. Accordingly, the first step in the analysis under § 523(a)(6) would be to determine whether Ardisson violated duties owed Glucona, causing injury to the company.

In the preceding section of this opinion, the Court concluded that there are numerous questions of fact as to whether Ardisson misappropriated trade secrets or unlawfully competed with Glucona. This being so, Glucona has not demonstrated that it has suffered an injury. Because Glucona has not established the first element under Code § 523(a)(6), and because the remaining two elements under § 523(a)(6) are questions of fact reserved for trial, the Court denies summary judgment with respect to Count I.

*Count II—Code § 523(a)(2)(A)*

In Count II of its complaint, Glucona alleges that Ardisson falsely and fraudulently presented claims for payment in reimbursement of personal expenses that he was not authorized to receive under the Employment Agreement. In addition, Glucona contends that Ardisson used his position as president of the company to procure payment of those items. As support for its motion for summary judgment on Count II, Glucona relies on the affidavit of Fred Shadoski ("Shadoski"), its controller, who testifies that he personally made all but one of the payments that provide the basis for the cause of action in Count II. That other payment was made for the installation of an alarm system in Ardisson's Netherlands residence.

Shadoski expresses his belief that none of the payments were authorized by any company policy, and that Glucona had no obligation to make the payments. According to Shadoski, Ardisson told him that there were company policies of which Shadoski was unaware. Shadoski further contends that Ardisson coerced payment of the funds through threats of discharge.

Ardisson denies that he made any false representations. Thus, he testifies in his affidavit that some of the expenses were owed him pursuant to company policy, and that some payments were made in lieu of other compensation he should have received for his services. Ardisson also avers that the bill for installation of the alarm system was sent directly to Glucona and paid by Glucona without his knowledge.

 Under Code § 523(a)(2)(A), a debt will not be discharged if all the following elements are proven: (1) the debtor incurred the debt through representations that he knew to be false or made with such reckless disregard for the truth so as to constitute willful misrepresentation; (2) the debtor intended to deceive the creditor; and (3) the creditor justifiably relied on the debtor's representations. *Field v. Mans,* 516 U.S. 59, 73–75, 116 S.Ct. 437, 446, 133 L.Ed.2d 351(1995); *In re Sheridan,* 57 F.3d 627, 635 (7th Cir.1995); *Wolford v. Ward (In re Ward),* 233 B.R. 810, 815 (Bankr.N.D.Ill.1999). To prevail on a complaint under § 523(a)(2)(A), the plaintiff must establish all three elements. *Ward, id.*

 There is some interrelationship between the first two elements, as proof of intent to deceive is measured by a debtor's subjective intention at the time a representation was made. *Bletnitsky v. Jairath (In re Jairath),* 259 B.R. 308, 315 (Bankr. N.D.Ill.2001). Where a person has knowingly or recklessly made false representations which the person knew or should have known would induce another to act, the finder of fact may infer intent to deceive. *Id.* The remaining element under § 523(a)(2)(A) entails a finding as to causation, as the plaintiff must establish that it actually and reasonably relied on the debtor's misrepresentation. *Id.*

 As applied here, even assuming that Ardisson's statements to Shadoski concerning company policy and his entitlement to reimbursement would be properly characterized as factual representations,[8] Ardisson's and Shadoski's affidavits contain conflicting opinions as to whether the payments were in reality authorized. Since there is a question of fact as to whether Ardisson made a false representation, Glucona has not established the first two elements under Code § 523(a)(2)(A).

---

8. Query whether a statement concerning the interpretation to be given a company policy or employee contract is a representation of fact.

Turning to the remaining requirement under the statute, Shadoski's testimony is ambiguous as to the reason why he made the payments at issue. While Shadoski maintains that Ardisson made false representations concerning company policy, he also states that Ardisson's threats of discharge caused him to make the payments. Because Glucona has not established as a matter of law or undisputed fact that the payments to Ardisson were procured through false pretenses, false representation, or actual fraud, the Court denies summary judgment with respect to Count II.

### Count III—Code § 727(a)(4)(A)

When Ardisson initially filed his statement of financial affairs in his bankruptcy case, he did not list income received from Glucona for the years 1999 and 2000 in the response to the following question in his statement of financial affairs:

1. *Income from Employment or Operation of Business*

 State the gross amount of income the debtor has received from profession, or from operation of the debtor's business employment, the beginning of this calendar year to the date this case was commenced. State also the gross amounts received during the *two years* immediately preceding this calendar year.

Responding to the question, Ardisson listed amounts received from Glucona during 1997 and 1998, even though the petition was filed on September 19, 2000. Later, in November 2000, Ardisson amended the answer, adding payments that he received from Glucona in 1999.

When Glucona filed the complaint in this adversary proceeding on December 14, 2001, it alleged that Ardisson had received approximately $140,000 from Glucona in 2000. That amount was comprised of two elements: (1) $40,000 representing salary and benefits for January through April 2000, and (2) $100,000 representing a termination payment under an April 7, 2000 judgment by a Netherlands court. Characterizing the omission of these amounts from the statement of financial affairs as material, Glucona argued that Ardisson should be denied discharge for having made a false oath or account.

Several days after Glucona filed this complaint, Ardisson amended his statement of financial affairs so as to disclose income from Glucona of $140,000 for the year 2000. By the time of that amendment, though, Ardisson's bankruptcy trustee had already filed a no asset report in the case. Glucona notes this sequence of events in its motion for summary judgment, and it argues that the only explanation for Ardisson's earlier omission is an intent to defraud creditors.

In an affidavit opposing the motion,[9] Ardisson attests that his attorney did not question him about his income for the year 2000, and that he was unaware that he was required to disclose that information in his statement of financial affairs. Ardisson contends that he told his trustee about the $140,000 at the continued meeting of creditors in his bankruptcy case, and that he supplied documents showing that by the time of his bankruptcy filing, the money had all been spent on a business venture. Ardisson comments that the omission would not have deceived Glucona, since the money came from the company, and he

---

9. As support for his response to Glucona's motion for summary judgment, Ardisson has filed two separate affidavits. The affidavit addressing Glucona's argument under Code § 727(a)(4) is a short, two-page affidavit that is separate and distinct from the longer affidavit 20–page affidavit in which Ardisson addresses Glucona's other causes of action.

states that he was not actually employed by Glucona in the year 2000.

 Complete financial disclosure is a condition precedent to the privilege of discharge. *Peterson v. Scott (In re Scott)*, 172 F.3d 959, 967 (7th Cir.1999). The purpose of the discharge objection under Code § 727(a)(4)(A) is to enforce a debtor's duty of disclosure and to ensure that the debtor provides reliable information to those who have an interest in the administration of a bankruptcy estate. *Netherton v. Baker (In re Baker)*, 205 B.R. 125, 130 (Bankr.N.D.Ill.1997). In order to prevail on a claim under § 727(a)(4)(A), the plaintiff must establish the following five elements: (1) that the Debtor made a statement under oath; (2) that the statement was false; (3) that the Debtor knew that the statement was false; (4) that the statement was made with intent to deceive; and (5) that the statement was related materially to the bankruptcy. *E.g., Cole Taylor Bank v. Yonkers (In re Yonkers)*, 219 B.R. 227, 232 (Bankr.N.D.Ill.1997).

 Because a debtor attests under oath to the accuracy of the schedules he signs, an error or omission can be a basis for denying discharge under § 727(a)(4)(A). *Sheikh v. Mukhi (In re Mukhi)*, 254 B.R. 722, 728 (Bankr.N.D.Ill. 2000). However, the fact that schedules are amended is relevant to the question of intent to defraud. *Gullickson v. Brown (In re Brown)*, 108 F.3d 1290, 1295 (10th Cir.1997). Although voluntary disclosure through testimony or an amendment to the schedules cannot expunge the falsity of an oath, it may be evidence of innocent intent. *Bensenville Community Center v. Bailey (In re Bailey)*, 147 B.R. 157, 165 (Bankr. N.D.Ill.1992).

 There is evidence to the effect that Ardisson made a false statement under oath that materially relates to his bankruptcy. Glucona also correctly observes that where a debtor is an experienced businessman, he may not be able to avoid responsibility for fraudulent omissions on the basis of counsel's errors. *See A.V. Reilly Int'l, Ltd. v. Rosenzweig (In re Rosenzweig)*, 237 B.R. 453, 457 (Bankr. N.D.Ill.1999). On the other hand, the Seventh Circuit has cautioned in another decision under Code § 727(a) that except in extreme cases, credibility questions relating to intent to defraud are to be left to the trier of fact to resolve on the basis of oral testimony. *In re Chavin*, 150 F.3d 726, 728 (7th Cir.1998). "For the case to be classified as extreme, the testimony sought to be withheld from the trier of fact must be not just implausible, but utterly implausible in light of all relevant circumstances." *Id.*

Applying the above principles, and drawing inferences in Ardisson's favor, the Court concludes that there are questions of fact concerning Ardisson's liability under Code § 727(a)(4). Most notably, Ardisson denies that he intended to defraud, and his representations concerning his testimony at creditors' meetings would support that proposition. Considered in the context of the evidence of record, Ardisson's testimony is not utterly implausible.

The fact that Ardisson ultimately amended his statement of financial affairs is also evidence of innocent intent. Although reliance on counsel ultimately may not excuse Ardisson from his responsibility of full disclosure, *Rosenzweig* denied discharge only after the presiding court had heard the testimony of the debtor and his attorneys. Because at a minimum, the question of intent to defraud must be left for trial, the Court denies summary judgment on Count III.

## CONCLUSION

For the reasons stated above, the motion for summary judgment of Plaintiff

Glucona America, Inc. is denied. A status hearing in this proceeding will be held on September __, 2001.